JACKSON, APPELLANT, *v.* CITY OF COLUMBUS ET AL., APPELLEES.

[Cite as *Jackson v. Columbus,* 117 Ohio St.3d 328, 2008-Ohio-1041.]

(No. 2006–2096—Submitted October 16, 2007—Decided March 13, 2008.)

PFEIFER, J.

{¶ 1} James Jackson, Chief of the Columbus Division of Police, appeals from a decision of the Franklin County Court of Appeals that affirmed summary judgment in favor of the city of Columbus and its former public safety director, Thomas W. Rice. Jackson claims that Rice had included a defamatory allegation about him in a report of an official investigation, conducted by Rice at the direction of the mayor of Columbus, regarding allegations of police corruption and malfeasance. Jackson contends that he has demonstrated actual malice because Rice either had a "high degree of awareness of [the published statement's] probable falsity," *Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125, or "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262. Given our duty to consider the evidence most strongly in favor of Jackson, we conclude that Rice may have acted with actual malice because at a minimum, he had a "high degree of awareness of [the published statement's] probable falsity." *Garrison,* 379 U.S. at 74, 85 S.Ct. 209, 13 L.Ed.2d 125. Accordingly, we hold that summary judgment is inappropriate and reverse the judgment of the court of appeals.

{¶ 2} Jackson has served as chief of police for the city of Columbus since 1990, and at the times relevant here, he reported to Rice, who served at the pleasure of Mayor Gregory Lashutka. In 1996, Chief Jackson reprimanded a police commander, Walter J. Burns, after investigating allegations that Burns had interfered with efforts to investigate and charge individuals involved in a Columbus-area prostitution ring. Rice considered this sanction too lenient and ordered an administrative review of Jackson's disciplinary action. Jackson states in an affidavit that Rice never read the report that Jackson had submitted in connection with his investigation of Burns. Jackson also contends that Rice did not include Jackson's written rationale of his decision concerning his reprimand of Burns in Rice's report to Mayor Lashutka. Jackson also states that the city attorney reviewed Jackson's decision and concluded that there was no evidence that Burns had committed a criminal act or had the intent to do something wrong. Rice's report to the mayor did not mention the city attorney's analysis.

{¶ 3} Rice subsequently learned of additional allegations regarding mismanagement by Chief Jackson and suggested to Mayor Lashutka that the situation required an official investigation into the management of the Division of Police. As a result, in October 1996, the mayor met with Jackson and Rice to discuss the situation, and the mayor presented Jackson with the option of retiring or facing a comprehensive investigation of the Division of Police. Jackson refused to resign. Consequently, the mayor announced that he had directed Rice to conduct "an examination of police misconduct relating to: (1) gambling operations * * *; (2) prostitution enterprises * * *; (3) favoritism * * *; and (4) other actions of misfeasance, malfeasance or nonfeasance which reasonably come to [Rice's] attention in the course of [his] examination."

{¶ 4} In June 1997, Rice presented his report of the investigation to the mayor and released it to the public. The only statement relevant to this case contained in the report is a statement attributed to Keith Lamar Jones, an inmate at the Chillicothe Correctional Institution, which alleges that Jackson had impregnated a juvenile prostitute. According to the report, Jones had a reputation of being a "scam artist," a "liar," and "not reliable as he uses information to his advantage."

{¶ 5} Investigators acting on behalf of Rice had interviewed Jones about a variety of claims. As part of the interview, Jones submitted to a polygraph examination. In the opinion of the polygraph examiner, Jones "was deceptive on some of the pertinent questions and did not tell the complete truth regarding all of the questions asked, [but] some of the information provided by Mr. Jones could be accurate." After completing the polygraph examination, the investigators questioned Jones about his claims concerning Jackson, and Jones stated that Jackson had fathered a child by a minor prostitute and was paying her child

support. (If this rumor were true or even credible, the seriousness of the allegation would necessitate its referral to a county prosecutor.)

{¶ 6} The report concluded that "Jones' deception during the polygraph examination makes his statements suspect but not completely invalid. [The examiner's] opinion is that Jones did not tell the complete truth. That is not to say there isn't some truth in the allegations. In Keith Jones [sic] favor is the fact that he could not have obtained the information from other law enforcement sources. In fact, Jones has repeatedly told his story to various officials by letter and by phone. The criminal allegations against [the sergeant] and the moral allegations against Jackson are unproven at this time and are dependent on evidence in the future from new sources or places."

{¶ 7} In 2001, Jackson filed this defamation suit against the city of Columbus, Director Rice, and Mayor Lashutka based on statements contained in the report of the investigation conducted by Rice. Jackson eventually dismissed Mayor Lashutka as a party, and in 2004, the remaining defendants were granted summary judgment on some of the claims. In May 2005, the trial court entered partial summary judgment in favor of Rice and the city, determining that Rice had not acted with the actual malice necessary to defeat the qualified privilege that attached to the publication of Jones's allegation in the report. Jackson subsequently dismissed the remaining claims, and the trial court thereafter entered final judgment in favor of Rice and the city of Columbus.

{¶ 8} Jackson appealed, contending that Rice had acted with actual malice in publishing the rumor that Jackson had impregnated a juvenile prostitute. The court of appeals affirmed the decision of the trial court, holding that a public-interest privilege applied. Jackson now appeals to this court, and we have agreed to review the following proposition of law: "A publisher commits defamation by publishing the defamatory statements of a third party when the publisher has a high degree of awareness of the probable falsity of those statements." *Jackson v. Columbus,* 112 Ohio St.3d 1489, 2007-Ohio-724, 862 N.E.2d 116. Jackson urges this court to follow the holdings in *Garrison,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, and *St. Amant,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, which establish that a publisher of defamatory statements acts with actual malice when the publisher has a high degree of awareness of the probable falsity of those statements, thus defeating any qualified privilege. Jackson further contends that a material issue of fact exists with respect to whether Rice was aware of the falsity of Jones's allegations and whether Rice was motivated by ill will, spite, or hatred when publishing those allegations. Rice counters that he did not act with actual malice, because he had an obligation to include Jones's allegation in the official report and because he did not present that allegation as fact. He further urges us to recognize a new public-interest privilege that bars liability for

publication of a third party's defamatory statement against a public official unless the claimant demonstrates actual malice with respect to whether the third party had made the statements, not with respect to whether the statements themselves were true or false.

{¶ 9} In Ohio, defamation occurs when a publication contains a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283. See *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 331 N.E.2d 713. If a claimant establishes a prima facie case of defamation, a defendant may then invoke a conditional or qualified privilege. *A & B–Abell,* 73 Ohio St.3d at 7, 651 N.E.2d 1283, citing *Hahn,* 43 Ohio St.2d at 243, 72 O.O.2d 134, 331 N.E.2d 713. In *Hahn,* we stated, "The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." 43 Ohio St.2d at 246, 72 O.O.2d 134, 331 N.E.2d 713. See *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 283, 84 S.Ct. 710, 11 L.Ed.2d 686 (proof of actual malice is required when a public official brings a defamation claim); *Garrison,* 379 U.S. at 77, 85 S.Ct. 209, 13 L.Ed.2d 125, (the privilege applies to "anything which might touch on an official's fitness for office"). A qualified privilege may be defeated only if a claimant proves with convincing clarity that a publisher acted with actual malice. *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus. Thus, actual malice in the context of a defamation action constitutes an "abuse of privilege." *A & B–Abell,* 73 Ohio St.3d at 11, 651 N.E.2d 1283.

{¶ 10} "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs,* 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus. The phrase "reckless disregard" applies when a publisher of defamatory statements acts with a "high degree of awareness of their probable falsity," *Garrison,* 379 U.S. at 74, 85 S.Ct. 209, 13 L.Ed.2d 125, or when the publisher "in fact entertained serious doubts as to the truth of his publication," *St. Amant,* 390 U.S. at 731, 88 S.Ct. 1323, 20 L.Ed.2d 262. See *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198.

{¶ 11} "In ruling upon defendant's motion for summary judgment in a libel action brought by a public official, the court shall consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff to determine whether a reasonable jury could find actual malice with

convincing clarity." *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 18 O.O.3d 354, 413 N.E.2d 1187, paragraph one of the syllabus. See *Perez*, 35 Ohio St.3d at 218, 520 N.E.2d 198. Thus, even though we are applying a heightened "convincing clarity" standard, we must construe all evidence in this case most strongly in favor of Jackson, the nonmoving party. See Civ.R. 56(C) ("summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor").

{¶ 12} We now review the record to determine whether there is sufficient evidence to permit a finding of actual malice as a matter of law. See *Perez*, 35 Ohio St.3d at 218, 520 N.E.2d 198. Jackson is a public official and therefore has the burden, at trial, of proving with convincing clarity that Rice abused the qualified privilege by republishing Jones's allegations with actual malice. On summary judgment, however, Jackson is entitled to have all evidence construed most strongly in his favor. See Civ.R. 56(C). Rice conducted an investigation at the behest of Mayor Lashutka into allegations of police misconduct, but his role as investigator did not grant him license to publish unsubstantiated rumors if he "in fact entertained serious doubts as to [their] truth." *St. Amant*, 390 U.S. at 731, 88 S.Ct. 1323, 20 L.Ed.2d 262. See id. at 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 ("recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports"). The 184–page report submitted by Rice to the mayor categorized the rumor that is the subject of this lawsuit as "unproven" and "suspect." The report stated that the source of the rumor was unreliable and a "liar" and "scam artist." The report and the 969 pages of exhibits in the report's appendix give the appearance of thoroughness. According to Jackson, however, Rice did not interview him before submitting the report to the mayor. Jackson also asserts in an affidavit that Rice did not ask him about Jones's allegation or inquire of anyone other than Jones about the allegation. If Rice had asked, Jackson would have informed him that a vasectomy had rendered him incapable of impregnating anyone. Construing the evidence most strongly in Jackson's favor, as we must when reviewing a summary judgment motion, we conclude that the evidence could support a determination that Rice had a "high degree of awareness of [the statement's] probable falsity," *Garrison*, 379 U.S. at 74, 85 S.Ct. 209, 13 L.Ed.2d 125, or that Rice "entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731, 88 S.Ct. 1323, 20 L.Ed.2d 262. Accordingly, the trial court improperly entered summary judgment in this case, and we reverse the judgment of the court of

appeals and remand this case for further proceedings not inconsistent with this opinion.

> Judgment reversed
> and cause remanded.

O'CONNOR, LANZINGER, and CUPP, JJ. concur.

MOYER, C.J., and LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 13} Respectfully, I dissent. In finding a genuine issue of fact regarding whether Safety Director Thomas Rice abused a qualified privilege by publishing a defamatory statement about Chief James Jackson, the majority fails to appropriately consider that Rice presented the statement only as an unproven allegation and that he did not act unreasonably by incorporating it into the report ordered by the mayor. In my view, these facts require an analysis different from that offered by the majority.

{¶ 14} As other courts have held, and as the Restatement of the Law 2d, Torts, provides, a limited exception to the "actual malice" standard applies when a defamatory statement has been identified as rumor or suspicion rather than fact and when publication of that statement is reasonable in view of the relationship between the parties, the interests involved, and the harm likely to result from publication. Under this analysis, Rice is entitled to summary judgment because Jackson cannot demonstrate with convincing clarity that Rice abused the qualified privilege in this case. Thus, the judgment of the court of appeals should be affirmed.

### Qualified Privilege and Actual Malice

{¶ 15} If a claimant establishes a prima facie case of defamation, a defendant may then invoke a qualified, or conditional, privilege. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283, citing *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713. The First Amendment to the United States Constitution provides a qualified privilege when a public official brings a defamation claim. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686. As the court explained in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 334, 94 S.Ct. 2997, 41 L.Ed.2d 789, its *New York Times* decision "defined a constitutional privilege intended to free criticism of public officials from the restraints imposed by the common law of defamation."

{¶ 16} A qualified privilege may be defeated only if the claimant proves with convincing clarity that the publisher acted with actual malice. *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 118–119, 18 O.O.3d 354, 413 N.E.2d 1187; *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 114, 573 N.E.2d 609. Actual malice in the context of a defamation action thus constitutes an "abuse of privilege." *A & B–Abell*, 73 Ohio St.3d at 11, 651 N.E.2d 1283. See also Restatement of the Law 2d, Torts (1977) Section 599, which states the general principle that "[o]ne who publishes defamatory matter concerning another upon an occasion giving rise to a conditional privilege is subject to liability to the other if he abuses the privilege."

{¶ 17} None dispute that Jackson is a public official and thus that a qualified privilege applies to Rice's publication of Jones's allegation against Jackson. Therefore, Rice cannot be liable for defamation unless Jackson demonstrates with convincing clarity that Rice published the allegation with "actual malice." See *New York Times Co.*, 376 U.S. at 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686; *Dupler*, 64 Ohio St.2d 116, 18 O.O.3d 354, 413 N.E.2d 1187, paragraph two of the syllabus.

{¶ 18} As the majority acknowledges, Ohio has adopted the standard for actual malice enunciated by the United States Supreme Court in *New York Times*, which bars liability for defamation unless the defendant published the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. 710, 11 L.Ed.2d 686; *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198. "Reckless disregard" has been determined to exist when a publisher of defamatory statements acts with a "high degree of awareness of their probable falsity," *Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125, or when the publisher "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262.

{¶ 19} Importantly, "actual malice" is not the same as common-law malice, which, as we stated in *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 79, 518 N.E.2d 1177, "connotes ill will, hatred, a spirit of revenge, or a conscious disregard for the rights and safety of other persons which has a great probability of causing substantial harm." Id., citing *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. We explained in *Varanese* that "[t]hese elements are constitutionally insufficient to prove actual malice in the context of a public-official defamation case under *New York Times Co. v. Sullivan,* supra. * * * *This is because the focus of inquiry is* not *on the defendant's attitude toward the* plaintiff, *but rather on the defendant's attitude* toward the truth or falsity *of the statement alleged to be defamatory.*" (Emphasis added.) Id. at 79–80, 518 N.E.2d 1177.

{¶ 20} Because a claimant is required to demonstrate actual malice with convincing clarity, we stated in *Dupler*, 64 Ohio St.2d at 120, 18 O.O.3d 354, 413 N.E.2d 1187, that "[s]ummary procedures are especially appropriate" in this context. We also held in *Dupler* that "if the court finds that there is no genuine issue of material fact from which a reasonable jury could find actual malice with convincing clarity, it must enter judgment for defendant." Id. at paragraph two of the syllabus. Moreover, when considering whether summary judgment has been properly entered in favor of the publisher, we independently review the record to determine whether the claimant has presented clear and convincing evidence of actual malice. *Perez*, 35 Ohio St.3d at 218, 520 N.E.2d 198, citing *Bose Corp. v. Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502; see also *Jacobs*, 60 Ohio St.3d at 114, 573 N.E.2d 609, and *A & B-Abell*, 73 Ohio St.3d at 12, 651 N.E.2d 1283.

{¶ 21} The majority acknowledges the foregoing law but, with little analysis or explanation, concludes that summary judgment is inappropriate on the issue of whether Rice acted with reckless disregard of the truth or falsity of Jones's allegation. I disagree.

### Publication of Defamatory Rumors and Suspicions

{¶ 22} The record demonstrates that Rice acted neither unreasonably nor with reckless disregard of the truth. The mayor had ordered Rice to conduct an investigation into all allegations of police misconduct that "reasonably come" to his attention, including allegations about prostitution, favoritism, and other acts of misfeasance, malfeasance, and nonfeasance. Jones's allegation that Chief Jackson had had sexual relations with and impregnated a juvenile prostitute was relevant to that investigation and was consistent with allegations that Jackson had consorted with prostitutes. In support of his allegation, Jones gave the investigators details about the juvenile prostitute, including her name, place of work, and a picture. Rice also knew that Jones had made his statement to several other public officials, as well as to a television news reporter. In his report, Rice did not vouch for Jones's allegation; rather, he expressly characterized it as "unproven" and "suspect," and he recounted that some law enforcement officers considered Jones to be a liar and a scam artist, while others had found him to be reliable. Nevertheless, Rice referred the allegation to the vice squad for further investigation.

{¶ 23} Courts have recognized the inadequacy of strictly applying the "actual malice" test in circumstances such as these, in which a publisher presents an allegation not as a fact but merely for what it is, to an audience that has a legitimate interest in hearing it, even though the publisher believes the allegation may be false. For example, in *Vanderselt v. Pope* (1998), 155 Or.App. 334, 345,

963 P.2d 130, the court acknowledged that "numerous cases stand for the proposition that one of the ways in which a qualified privilege may be lost is if the publisher lacked a belief * * * in the truth of the defamatory statement," but stated that "a variation on that rule applies in situations where a person who republishes a defamatory statement does so under circumstances that make it clear that it is an allegation, not a fact, that is being repeated." See also *Cooper v. Portland Gen. Elec. Corp.* (1992), 110 Or.App. 581, 587, 824 P.2d 1152; *Randolph v. Beer* (Fla.App.1997), 695 So.2d 401, 403; *Dawson v. New York Life Ins. Co.* (N.D.Ill.1996), 932 F.Supp. 1509, 1532; *Stockton Newspapers, Inc. v. Superior Court of San Joaquin* (1988), 206 Cal.App.3d 966, 978, 254 Cal.Rptr. 389.

{¶ 24} And in *Stukuls v. State* (1977), 42 N.Y.2d 272, 281, 397 N.Y.S.2d 740, 366 N.E.2d 829, the court stated, "[A]s to a defamatory rumor as distinguished from a defamatory fact, mere knowledge or belief that the rumor is false will not necessarily defeat the privilege, provided it was '(a) * * * [stated] * * * as rumor or suspicion and not as fact, and (b) the relation of the parties, the importance of the interests affected and the harm likely to be done make the publication reasonable.' " Id., quoting Restatement of the Law 2d, Torts (1938), Section 602. The court explained, "This gives recognition to the fact that 'there are occasions on which it may be entirely proper to give information of a rumor or a mere suspicion, as such, without any belief or reason to believe that it represents the truth.' " Id., quoting Prosser, Torts (4th Ed.1967) 795–796, Section 115. Furthermore, "[i]t makes great common sense that there should be no liability in circumstances in which there is a qualified or conditional privilege, if the publisher reports the defamatory matter to advance the legitimate interests of the recipient and he states it only for what it is—rumor or suspicion and not fact." Id. at 284, 397 N.Y.S.2d 740, 366 N.E.2d 829 (Jones, J., concurring).

{¶ 25} This analysis emanates from the Restatement of the Law 2d, Torts. Section 600 of the Restatement of the Law 2d, Torts (1977) sets forth the well-established test for actual malice:

{¶ 26} "*Except as stated in § 602,* one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he

{¶ 27} "(a) knows the matter to be false, or

{¶ 28} "(b) acts in reckless disregard as to its truth or falsity." (Emphasis added.) See also *New York Times,* 376 U.S. at 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686.

{¶ 29} Section 602 of the Restatement then states the exception:

{¶ 30} "One who upon an occasion giving rise to a conditional privilege publishes a defamatory rumor or suspicion concerning another does not abuse the privilege, even if he knows or believes the rumor or suspicion to be false, if

{¶ 31} "(a) he states the defamatory matter as rumor or suspicion and not as fact, and

{¶ 32} "(b) the relation of the parties, the importance of the interests affected and the harm likely to be done make the publication reasonable."

{¶ 33} Some have argued that adoption of the analysis in Section 602 would create an exception that swallows the rule, with the result that a qualified privilege could never be defeated. This is not the case, however. As the court stated in *Stukuls*, "the protection of the privilege will still be subject to defeasance by excessive publication (Restatement, Torts 2d, § 604), or by the publication of defamatory matter solely for an improper purpose (id., § 605), including its publication 'solely from spite or ill will' (id., § 603, Comment a)." 42 N.Y.2d at 281, 397 N.Y.S.2d 740, 366 N.E.2d 829, citing *Brewer v. Second Baptist Church of Los Angeles* (1948), 32 Cal.2d 791, 797, 197 P.2d 713; Prosser, Torts, 792–796, Section 115. Furthermore, nothing in this analysis would permit an individual to escape liability by, for example, "repeating the defamation of others and defending it as simply an accurate report of what someone else had said." *Gray v. St. Martin's Press, Inc.* (C.A.1, 2000), 221 F.3d 243, 250.

{¶ 34} I would urge the adoption of the Restatement view and hold that in instances where an allegedly defamatory statement has been published on the occasion of a qualified privilege, no abuse of the privilege occurs when the statement has been identified as rumor or suspicion rather than fact and when publication is reasonable in view of the relationship between the parties, the interests involved, and the harm likely to result from publication.

### *Application of the Restatement View*

{¶ 35} The record reveals that Rice's report identified the statement made by Jones as "unproven" and "suspect." The report also expressly doubted Jones's credibility, although it cautioned that he had been reliable on other occasions, as well. The record shows, however, that Rice referred the matter to the vice squad for further investigation. Moreover, the directive from the mayor related to serious allegations about the police, obligating Rice to investigate every source of information that reasonably came to his attention. Jones's allegation against Jackson, in particular, directly concerned one of the underlying focuses of the investigation—namely, police involvement in prostitution—and it connected with similar allegations made by two prostitutes. Rice also knew that Jones had made the same allegation to other government officials, including a member of the media. Any report failing to investigate this source of information would itself

lack credibility. Thus, incorporating Jones's statement into the report and detailing questions about his veracity and credibility were not unreasonable in this instance. Given the public's interest in the integrity of its police department, the relationship between the mayor, Rice, and Jackson, and the high offices they held in the city of Columbus, Rice had a duty to conduct a comprehensive investigation of all allegations. Given the aspersions cast upon Jones and his doubtful credibility as related in the report, the impact of including that allegation in the report could not likely be substantial.

{¶ 36} The fact that Rice did not interview Jackson or inquire further into Jones's allegation before publishing it does not mean that he acted unreasonably. Had Rice done so and learned that a vasectomy had rendered Jackson incapable of impregnating anyone, he still would have had the duty to include the allegation of sexual relations in his report. Furthermore, we have held in other qualified-privilege cases that a publisher is not liable for failing to verify a statement unless either the publisher knew it was false or the statement is patently unbelievable. See *Varanese*, 35 Ohio St.3d 78, 518 N.E.2d 1177, paragraph two of the syllabus ("a newspaper's liability for failure to check the accuracy of advertisements, including political advertisements, is limited to those cases where the defendant actually knew the ad was false before publication, or where the ad is so inherently improbable on its face that the defendant must have realized the ad was probably false"). The record in this case supports neither conclusion.

{¶ 37} Finally, the fact that Rice also published the report to the public is of no consequence because it is a public record. In *State ex rel. Police Officers for Equal Rights v. Lashutka* (1995), 72 Ohio St.3d 185, 648 N.E.2d 808, the Columbus Division of Police refused to make available "Internal Affairs Bureau investigations, chain of command investigations and other like records," asserting that they were not subject to Ohio's Public Records Act. In holding that these documents were public records, we stated emphatically, "The Division of Police is just plain wrong!" Id. at 187, 648 N.E.2d 808. Here, Rice could not have kept the report a secret, nor could he have withheld the witness statements and other documents that supported it. In view of this fact, and in view of the fact that the mayor publicly ordered Rice to perform the investigation and that Jones had repeated his allegation to other public officials and a member of the media, Rice did not act unreasonably by making the report public.

{¶ 38} Moreover, citizens have an important interest in the fitness of individuals to hold public office. As the court explained in *Gertz*, "[a]n individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case. And society's interest in the officers of government is not strictly limited to the formal discharge of official duties." 418

U.S. at 344, 94 S.Ct. 2997, 41 L.Ed.2d 789. The court in *Garrison* further recognized the "paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character." 379 U.S. at 77, 85 S.Ct. 209, 13 L.Ed.2d 125.

## Conclusion

{¶ 39} Based on the foregoing, and construing all evidence and making all inferences in favor of Jackson, I would hold that he cannot clearly and convincingly demonstrate that Rice abused the qualified privilege when publishing Jones's allegations as part of his report to the mayor of Columbus regarding the investigation of the police department. The report expressly identified Jones's statements as allegations rather than fact, and publication of that report was reasonable in light of the relationship between the parties, the interests involved, and the harm likely to be done from its publication. In my view, therefore, the trial court properly entered summary judgment in this case, and the judgment of the court of appeals should be affirmed.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

---

Buckingham, Doolittle & Burroughs, L.L.P., and Charles E. Ticknor III; and Eva C. Gildee, for appellant.

Glenn B. Redick, for appellee city of Columbus.

Porter, Wright, Morris & Arthur, L.L.P., Bradd N. Siegel, Kathleen M. Trafford, and Constance M. Greaney, for appellee Thomas W. Rice.