[Cite as *Gossard v. Ohio Dept. of Job & Family Servs.*, 2015-Ohio-5561.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STEVEN D. GOSSARD

       Plaintiff

       v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES

       Defendant

Case No. 2014-00084

Judge Patrick M. McGrath
Magistrate Holly True Shaver

DECISION

{¶1} On December 19, 2014, defendant filed a motion for judgment on the pleadings pursuant to Civ.R. 12, and/or summary judgment pursuant to Civ.R. 56(B). With leave of court, on January 22, 2015, plaintiff filed a response and his own motion for summary judgment. On February 2, 2015, defendant filed a response. On February 10, 2015, plaintiff filed a motion for leave to file a reply, which is GRANTED, instanter. The motions are now before the court for a non-oral hearing. Inasmuch as the parties filed additional documentation to support their motions, they shall be treated as cross-motions for summary judgment pursuant to Civ.R. 56.

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable

minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶4} On September 26, 2011, plaintiff was hired by defendant as a veteran outreach specialist to report to an office in Toledo, Ohio. Plaintiff's duties included performing "outreach" work to inform veterans of programs available to them. Plaintiff's outreach work required him to travel to different Ohio counties.

{¶5} In September 2012, plaintiff expressed interest in moving his headquarters from the Toledo office to the Allen County office, so that he could perform outreach in Allen, Putnam, and Paulding Counties. Although plaintiff was permitted to temporarily work in those counties, a dispute arose regarding whether his headquarters office remained in Lucas County or was changed to Allen County. Plaintiff asserts that he was given permission to report from Allen County, while defendant asserts that his headquarters was never changed from Lucas County. On September 20, 2012, plaintiff advised his supervisor, Daniel Hurlbert, via email that there would be a "recurring time adjustment" on his timesheets for his travel to Putnam and Paulding Counties three days per week. Hurlbert approved plaintiff's timesheets and requests for travel reimbursement.

{¶6} On November 26, 2012, David Stonerock became plaintiff's section chief. After a meeting with Stonerock, on January 16, 2013, Hurlbert sent an email to plaintiff and Stonerock advising that even though plaintiff was working on a temporary assignment for six months in Allen, Paulding, and Putnam Counties, plaintiff's primary work location remained at the Toledo office. Hurlbert stated: "The distance from your home to your current headquarters, Lucas Co., is greater than it is to Allen, Paulding, or Putnam Counties. Consequently, you are not authorized reimbursement for travel to and from any of those three One-Stops. You are, however, authorized reimbursement for all outreach travel." (Defendant's Exhibit B-1, Bates Number 1970.)

{¶7} On April 29, 2013, Stonerock sent an email to Hurlbert advising him that plaintiff should not be "getting travel time * * * or travel money for travel to Putnam, Paulding or Lucas Counties. His assigned location (Lucas County) is less than the travel to Putnam, Paulding or Lucas. His ONLY travel expense should be outreach

from those counties. * * * His travel money is extremely high for someone who's [sic] normal commute one way is 60 miles." (Plaintiff's Exhibit 2, Bates Number 1265.)

{¶8} On May 22, 2013, Stonerock sent an email to plaintiff regarding his adjusted time for travel, and advised plaintiff that he was not authorized travel time from his current residence in Wapakoneta to Ottawa County since that distance was less than plaintiff's normal commute to Lucas County. (Plaintiff's Exhibit 2, Bates Number 2421.) Plaintiff was advised to adjust his schedule immediately. *Id.* On May 28, 2013, plaintiff sent an email to his union representative about his assumption that his headquarters had been changed to the Lima office, that his supervisors, including Pam Mason, agreed that he would be entitled to travel reimbursement, and that he felt that he was being treated unfairly in regard to travel reimbursement and adjusting his time. (Plaintiff's Exhibit 2.) Plaintiff informed his union representative that he viewed his email as an official grievance. *Id.*

{¶9} On May 31, 2013, Stonerock filed a request for an investigation into potential fraud with regard to plaintiff's travel reimbursements. On August 23, 2013, plaintiff submitted a letter of resignation, wherein he stated that he had been constructively discharged. On August 30, 2013, the Office of the Chief Inspector issued its Report of Investigation (ROI). Plaintiff asserts that the ROI contains defamatory statements about him. Specifically, plaintiff asserts that the ROI states that he committed "wrongful acts" by submitting false travel mileage reimbursements and payroll requests, accused him of of theft from the state, and stated that he engaged in "potential criminal activity." Plaintiff alleges that the ROI contained inaccurate information and relied on false allegations to conclude that he had violated the travel reimbursement policy. Plaintiff further alleges that the preliminary findings were forwarded to the State Highway Patrol and the Ohio Inspector General for review. Plaintiff asserts that defendant's employees knew that he had previously run for public office and that because of the defamatory statements contained in the ROI, he decided not to run for public office in 2014. Plaintiff asserts a claim of defamation[1] and seeks an immunity determination with regard to several of defendant's employees, including Ryan Beaty, investigator for defendant's office of the Chief Inspector; Robert Ferguson, Chief Inspector; Steven Johnson, Investigations Supervisor; Bruce Madson, Assistant

Director, Employment Services; Pam Mason, Bureau Chief, Veterans Services; David Stonerock, Section Chief, Veterans Services; and John Weber, Deputy Director, Workforce Development.

{¶10} "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). "'Slander' refers to spoken defamatory words, while 'libel' refers to written or printed defamatory words." *Schmidt v. Northcoast Behavioral Healthcare*, 10th Dist. Franklin No. 10AP-565, 2011-Ohio-777, ¶ 8.

{¶11} "To succeed on a defamation claim, a plaintiff must establish: (1) a false statement, (2) about the plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff." *Watley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 07AP-902, 2008-Ohio-3691, ¶ 26.

{¶12} Defendant asserts that any statements contained in the ROI are subject to the defense of a qualified privilege, and that plaintiff has failed to produce evidence to show that the statements were made with actual malice.

{¶13} Privileged statements are those that are "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975). "A qualified privilege may be defeated only by clear and convincing evidence of actual malice on the part of the defendant." *DeGarmo v. Worthington City Schools Bd. of Edn.*, 10th Dist. Franklin No. 12AP-961, 2013-Ohio-2518, ¶ 18. "Actual malice" means "acting with knowledge that the

---

[1]In his response to defendant's motion, plaintiff specifically states that he is not asserting any claim for breach of contract or employment discrimination via constructive discharge. Therefore, the

statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d. 111, 116 (1991).

{¶14} In support of its motion, defendant filed the affidavits of Stonerock, Beaty, Johnson, and Ferguson, who all aver that they have never made any untrue statements, oral or written, about plaintiff, that any statements that they have made about plaintiff were made as a part of their official duties for defendant, and that at all times relevant, they were acting appropriately and within in the course and scope of their employment, not with malicious purpose, in bad faith, or in a wanton or reckless manner. In addition, Stonerock avers the following:

{¶15} "5. In September 2012, Steven D. Gossard was temporarily assigned to complete outreach in Allen, Paulding, and Putnam Counties.

{¶16} "6. After a spike in Steven D. Gossard's travel reimbursements in November 2012, he was reminded of the proper procedure for reimbursements while on his temporary assignment in January 2013. When the reimbursement requests did not decline, I reported the matter for potential fraud in May 2013.

{¶17} "7. Steven D. Gossard was a member of a collective bargaining unit and was required to utilize the grievance process included in his collective bargaining agreement."

{¶18} In Beaty's affidavit, he states:

{¶19} "3. In 2013, I completed an investigation regarding Steven D. Gossard's work hours and travel reimbursements. As a result of that investigation, I prepared a Report of Investigation (ROI) dated August 30, 2013. A true and accurate copy of the ROI is attached to this affidavit as Exhibit B-1."

{¶20} The ROI shows that Beaty served as the investigator, Johnson reviewed the ROI, and that Ferguson approved the ROI. The ROI was sent to Madson and Weber, as well as three other of defendant's managerial level employees. The language contained in the ROI shows that plaintiff was investigated for two issues: 1) submitting travel reimbursements for travel that was less than his normal commute time from his home in Wapakoneta to his headquarters in Toledo, and, 2) improperly adjusting his work hours for travel. During the investigation, plaintiff's timekeeping records and electronic calendar were reviewed, and both plaintiff and Hurlbert were interviewed. The ROI includes the applicable travel reimbursement policy and

court shall address plaintiff's sole claim of defamation.

references emails made among plaintiff and defendant's employees. The ROI concluded that there was reasonable cause to believe that wrongful acts occurred, specifically that plaintiff "may have violated ODJFS policy when he requested mileage reimbursement he was not entitled to," that plaintiff "may have violated ODJFS policy when he submitted payroll requests for time he was not entitled to," and that Hurlbert's failure to comply with explicit instructions may have violated ODJFS policy when he failed to provide proper supervisory direction and oversight by authorizing payroll and travel reimbursement [plaintiff] was not entitled to." (ROI, pages 6-9.) It was further recommended that defendant review the report for disciplinary actions and procedure violations consistent with the findings and conclusions in the report, and that a procedure be established whereby employees who travel regularly declare their permanent residence, normal commute time, and commute miles. Finally, it was recommended that additional training be conducted and that the travel and conference expense reimbursement policy be acknowledged by employees.

{¶21} Defendant also submitted a copy of its "standards of employee conduct." Section C. INVESTIGATIONS, states: "Allegations of misconduct will be investigated. During the course of an investigation, employees are to cooperate fully by providing all pertinent information. Failure of an employee to answer any inquiry fully, truthfully, and to the best of their knowledge will be grounds for disciplinary action. Individuals may also be required to submit to an official search of person or property. An employee may be placed on Administrative Leave during an investigation."

{¶22} In response to defendant's motion and in support of his own motion for summary judgment, plaintiff submitted his own affidavit, wherein he states, in relevant part:

{¶23} "2. MUO travel was reimbursement for travel from my primary work location to my other assigned offices (travel pay from headquarters to the secondary offices or "One-Stops). Outreach travel, on the other hand, included reimbursement from my primary work location to wherever I would conduct the outreach within my assigned jurisdiction. Outreach could be conducted anywhere veterans would congregate, such [as] VSO offices, libraries, veteran organizations, churches, hanging flyers, etc.

{¶24} "3. On August 23, 2013, I submitted my resignation.

{¶25} "4. Any schedule adjustments made after January 16, 2013 were strictly for commuting purposes and not travel reimbursement.

{¶26} "5. On September 6, 2013, Ryan Beaty confirmed that the Report of Investigation is 'public record.'

{¶27} "6. ODJFS and its agents knew that I had previously ran [sic] for public office and that I had aspirations to do so again in the future.

{¶28} "7. As a direct result of the defamatory allegations published against me, I decided not to run for public office.

{¶29} "8. I never worked from Toledo or was asked to work from Toledo after January 16, 2013 until I was directed to return to Toledo on June 3, 2013."

{¶30} Plaintiff also submitted email to support his interpretation that his travel reimbursement requests were legitimate inasmuch as they had been approved by Hurlbert. Plaintiff further asserts that since the ROI contains factual contradictions, such as his own contention that he was authorized to use the Allen County office to calculate reimbursement for outreach, as opposed to Stonerock's contention that plaintiff continued to request and receive travel reimbursement that he was not entitled to after he had been repeatedly counseled on what was appropriate, the allegations contained in the ROI are patently false. Plaintiff also asserts that no reasonable person conducting an investigation could have reached the conclusions that defendant did, that the outcome was based on ill will, revenge, moral obliquity, conscious wrongdoing, fraud, or at a minimum a reckless disregard for the truth. Plaintiff points to an email from Pam Mason to Stonerock wherein she relates that she was "pissed" after she was informed by Hurlbert that plaintiff's union representative told Hurlbert that Mason had made negative statements about Hurlbert in a meeting, presumably about plaintiff's assertion that the travel policy was being applied to him unfairly. (Plaintiff's Exhibit 2, Bates Number 1873.) Plaintiff asserts that Mason's email and the allegations in the ROI raise an inference of actual malice, in that defendant's employees knew that the allegations that they were making against him were false.

{¶31} Based on the evidence provided by both parties under Civ.R. 56, reasonable minds can only conclude that any statements by employees of defendant to the effect that plaintiff was violating the travel reimbursement policy/and or was inaccurately reporting his time were subject to a qualified privilege and were not made with actual malice. Plaintiff has provided no evidence, other than his own self-serving

assertions, that defendant's employees acted with either knowledge that the statements were false or with reckless disregard as to their truth or falsity. Plaintiff's assertion that his requests for travel expenses were legitimate because they had been approved by Hurlbert does not support an inference that defendant's employees acted with actual malice. Indeed, Hurlbert was also criticized in the ROI for approving plaintiff's requests. Plaintiff's assertion that defendant's employees knew that he had run for public office and engaged in the investigation to prevent him from running for office is self-serving and uncorroborated. Finally, Mason's email wherein she describes being "pissed" does not lead to an inference that the statements in the ROI were false or were made with reckless disregard as to their truth or falsity. The only reasonable conclusion is that any statements made in the ROI were subject to a qualified privilege, and that plaintiff has failed to present evidence, which if believed, could lead to the logical inference that defendant's employees acted with actual malice. Therefore, defendant is entitled to summary judgment as a matter of law with respect to plaintiff's defamation claims.

{¶32} Inasmuch as the court has found that any alleged defamatory statements that were made were privileged, and that plaintiff has not brought forth evidence to lead to a reasonable conclusion that defendant's employees acted with actual malice, the court further finds that there is no genuine issue as to any material fact that defendant's employees were acting within the course and scope of their employment, and that they did not act with malicious purpose, in bad faith, or in a wanton or reckless manner at all times relevant.

_____
PATRICK M. MCGRATH
Judge

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

STEVEN D. GOSSARD

       Plaintiff

       v.

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES

       Defendant

Case No. 2014-00084

Judge Patrick M. McGrath
Magistrate Holly True Shaver

<u>JUDGMENT ENTRY</u>

{¶33} A non-oral hearing was conducted in this case upon the parties' cross-motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. The court further finds that Ryan Beaty, Robert Ferguson, Steven Johnson, Bruce Madson, Pam Mason, David Stonerock, and John Weber are entitled to immunity pursuant to R.C. 9.86 and R.C. 2743.02(F) and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against them based upon the allegations in this case. Plaintiff's motion for summary judgment is DENIED. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____

PATRICK M. MCGRATH
Judge

cc:

Amy S. Brown
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Curtis A. New
571 South Main Street, #7
Englewood, Ohio 45322

**Filed March 11, 2015**
**Sent To S.C. Reporter 12/31/15**