| | |
|---|---|
| ROBERT HILL | Case No. 2019-00632JD |
| Plaintiff | Judge Patrick M. McGrath |
| | Magistrate Gary Peterson |
| v. | |
| | DECISION |
| OHIO DEPARTMENT OF | |
| REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} On September 16, 2019, defendant, Ohio Department of Rehabilitation and Correction (ODRC), filed a motion for summary judgment pursuant to Civ.R. 56(B). On October 28, 2019, plaintiff filed a memorandum in opposition. The motion for summary judgment is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶2} As a preliminary matter, on December 27, 2019, plaintiff filed a document captioned "Plaintiff Robert Hill's Motion for Leave to Compel Production of Video & Prographs (sic) for Inspection." Plaintiff requests that the court compel ODRC to provide him with "video, photographs, and/or stile photographs for inspection" pursuant to Civ.R. 37. Plaintiff states that he sent ODRC a request for production of documents in July of 2019. Plaintiff avers that ODRC responded by objecting to the request. On January 8, 2020, ODRC filed a response wherein it agreed to make the video available for plaintiff's inspection. Therefore, plaintiff's motion is DENIED as moot. The court will now address ODRC's motion for summary judgment.

**Standard of Review**

{¶3} Civ.R. 56(C) states, in part, as follows:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits,

transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**Factual Background**

{¶4} At all times relevant to the verified complaint, plaintiff was an inmate in the custody and control of ODRC at the Noble Correctional Institution (NCI). Plaintiff alleges in his verified complaint that on June 13, 2018, Investigator Jared McGilton wrote a false and defamatory conduct report concerning plaintiff's involvement in a drug network at NCI. Plaintiff states that as a result of McGilton's false report, plaintiff was discharged as a law clerk and placed in segregation. Plaintiff was also transferred to a more restricted facility and lost privileges. Plaintiff attached a copy of a conduct report to his complaint, which shows that he was charged with a violation of ODRC Rule 40. Plaintiff also attached a copy of the Disposition of the Rules Infraction Board, which found him guilty of a violation of ODRC Rule 40. Plaintiff brings this action for defamation arising out of the statement that was written in the conduct report regarding his involvement in a drug network at NCI.

{¶5} Defendant argues, among other things, that the allegedly defamatory statements are protected by a qualified privilege. In support of its motion, ODRC submitted an affidavit from Investigator Jared McGilton, a conduct report, the disposition of the Rules Infraction Board, and a warden's decision on appeal. McGilton avers that

in 2016, he began an investigation at NCI regarding an illegal drug conveyance network facilitated by another inmate named Adam Poulton.  (McGilton Aff. ¶ 3.)   By utilizing confidential sources, video surveillance, phone monitoring, and JPay communications, McGilton discovered that Poulton was involved in conveying, distributing, and selling illegal drugs for profit within NCI.  *Id.*  Poulton conveyed the drugs into NCI; thereafter, he distributed the drugs amongst multiple inmates.  *Id.*  Poulton was subsequently criminally convicted for his involvement in the drug network.  *Id.*

{¶6} McGilton states that plaintiff was assigned to NCI's law library during the time of his investigation.  (McGilton Aff. ¶ 4.)  According to McGilton, video evidence and confidential sources suggested plaintiff assisted Poulton by hiding large quantities of Suboxone inside the law library and facilitated meetings between individuals involved in the drug conveyance network.  *Id.*  Based on this evidence, McGilton wrote a conduct report against plaintiff, charging him with a violation of ODRC Rule 40.[1]  (McGilton Aff. ¶ 5.)   McGilton explains that a conduct report is a document that ODRC uses to memorialize that an inmate has violated one or more of the inmate rules.  *Id.*  On June 13, 2018, NCI's Rules Infraction Board (Board) found plaintiff guilty of violating ODRC Rule 40.  (McGilton Aff. ¶ 6.)  Plaintiff appealed the Board's decision to the warden and that decision was later affirmed on July 6, 2018.  (McGilton Aff. ¶ 7.) McGilton avers that he did not show a copy of the conduct report to any inmates at NCI, or to anyone other than ODRC staff.  (McGilton Aff. ¶ 8.)

{¶7} Plaintiff, in opposing ODRC's motion, submitted his own affidavit, two affidavits by Adam Poulton, a verified complaint, ODRC's responses to plaintiff's first set of admissions and production of documents and interrogatories, and several other exhibits attached thereto.  In his affidavit, plaintiff states that he was housed in D1 and

---

[1]According to McGilton, an ODRC Rule 40 violation involves "procuring or attempting to procure, unauthorized drugs; aiding, soliciting, or collaborating with another to procure unauthorized drugs or to introduce unauthorized drugs into a correctional facility."

worked as a law clerk in the NCI library where he would regularly assist inmates with their legal issues.  (Hill Aff. ¶ 9.)  Plaintiff states "[b]ecause I assisted a few inmates either during the appeal process, postconviction relief, or judicial release, they were granted relief, thus making me the most popular inmate at Noble Correctional Institution."  *Id.*  During his employment as a law clerk in the NCI law library, plaintiff did not receive a conduct report from April of 2012 to June of 2018.  *Id., at ¶ 19.*

{¶8} Plaintiff recounted that in April of 2016, as he exited the inmate dining hall, an officer called him over and began to conduct a search of his person.  *Id., at ¶ 20.*  According to plaintiff, the officer conducted the search to humiliate him in front of the other officers watching.  *Id.*  Plaintiff states that the officer "grabbed my underwear band and pulled as hard as he could pulling my underwear between my butt cheeks ripping the band of my underwear."  *Id.*  Plaintiff states that as he turned to walk away from the officer, he shook his head.  *Id., at ¶ 21.*  According to plaintiff, McGilton then called plaintiff over to him, yelled at him for being disrespectful, and stated that plaintiff did not belong in D1 and that he was going to place plaintiff in segregation.  *Id., at ¶ 22.*  Plaintiff states that he did not respond to McGilton, which caused McGilton to become angrier.  *Id.*  Plaintiff avers that he later learned McGilton wanted plaintiff removed from D1, but he did not have a justifiable reason to do so.  *Id., at ¶ 24.*

{¶9} Plaintiff avers that in June or July of 2016, Poulton requested assistance from plaintiff with a postconviction relief petition.  *Id., at ¶ 26.*  According to plaintiff, Poulton was placed in segregation and after being released, began working for McGilton as a confidential informant.  *Id., at ¶ 30.*  Plaintiff states "[e]verytime I learned about drugs in the institution I passed information to [Poulton] assuming he passed it to the Investigator."  *Id., at ¶ 35.*  On June 6, 2018, plaintiff was taken to segregation and was placed in a holding cell with Poulton.  *Id., at ¶ 45.*  While in the holding cell, plaintiff learned that Poulton's girlfriend was caught conveying Suboxone into NCI.  *Id.*  Plaintiff

states that he was later issued a conduct report for his alleged involvement in a drug network at NCI.  *Id.,* at ¶ 48.

{¶10} According to plaintiff's affidavit, during the Rules Infraction Board hearing held on June 18, 2018, he denied any involvement in the drug network and called McGilton a "lying piece of shit."  *Id.,* at ¶ 51.  The Board found plaintiff guilty of violating ODRC Rule 40.  *Id.,* at ¶ 52.  Plaintiff appealed the Board's decision, but his appeal was denied.  *Id.,* at ¶ 53.  Plaintiff states, "I did not at anytime (sic) during my incarceration at the Noble Correctional Institution participate in any drug network, attempted to or conveyed drugs into the facility, sell, possess, hold or hide drugs on my person, in the law library for myself or anyone else."  *Id.,* at ¶ 58.  Plaintiff states that he had no knowledge that Poulton was conveying drugs into NCI.  *Id.,* at ¶ 60.  Plaintiff avers that McGilton does not possess any confidential informant statements or statements from staff members regarding his involvement in a drug network.  *Id.,* at ¶ 63-64. Plaintiff further avers that McGilton possesses no Jpay messages, telephone recordings, or video evidence to support the conduct report.  *Id.,* at ¶ 65-66.  At the end of his affidavit, plaintiff states "Investigator McGilton did, purposely, with actual malice write the June 13, 2018 conduct report being aware of the high probability of falsity with allegations that video exist, and confidential sources exist, that I not only held or hide drugs in the law library but would also facilitate meetings of individuals in conveyance of drugs."  *Id.,* at ¶ 69.

{¶11} In his affidavits, Adam Poulton states that plaintiff was never involved in conveying drugs and his involvement with plaintiff was only related to assistance with his postconviction relief.  (Poulton first Aff. ¶ 1-2.)  Poulton goes on to state that for almost two years he would meet with plaintiff in the law library to discuss case law. (Poulton second Aff. ¶ 6.)  Poulton avers that he never discussed or exchanged Suboxone or any other drug with plaintiff.  *Id.,* at ¶ 8.

**Law and Analysis**

{¶12} As previously stated, plaintiff alleges the conduct report issued by McGilton constitutes defamation. "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9, quoting *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995). "'Slander' refers to spoken defamatory words, while 'libel' refers to written or printed defamatory words." *Schmidt v. Northcoast Behavioral Healthcare*, 10th Dist. Franklin No. 10AP-565, 2011-Ohio-777, ¶ 8.

{¶13} "To succeed on a defamation claim, a plaintiff must establish: (1) a false statement, (2) about the plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff." *Watley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 07AP-902, 2008-Ohio-3691, ¶ 26.

{¶14} "Under Ohio common law, actionable defamation falls into one of two categories: defamation per se or defamation per quod." *Am. Chem. Soc. v. Leadscope, Inc.*, 10th Dist. Franklin No. 08AP-1026, 2010-Ohio-2725, ¶ 49.

> In order to be actionable per se, the alleged defamatory statement must fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule, or contempt.

*Woods v. Capital Univ.*, 10th Dist. Franklin No. 09AP-166, 2009-Ohio-5672, ¶ 28.

On the other hand, a statement is defamatory per quod if it can reasonably have two meanings, one innocent and one defamatory. Therefore, when the words of a statement are not themselves, or per se, defamatory, but they are susceptible to a defamatory meaning, then they are defamatory per quod. Whether an unambiguous statement constitutes defamation per se is a question of law.

(Citations omitted.) *Woods* at ¶ 29.

{¶15} "When a statement is found to be defamation per se, both damages and actual malice are presumed to exist." *Knowles v. Ohio State Univ.*, 10th Dist. Franklin No. 02AP-527, 2002-Ohio-6962, ¶ 24. "When, however, a statement is only defamatory per quod, a plaintiff must plead and prove special damages." *Am. Chem. Soc.* at ¶ 51.

{¶16} As stated earlier, in its motion, ODRC argues among other things that a qualified privilege exists for its employees who interact with inmates on a daily basis to report and prohibit the conveyance of drugs inside the prison.

The purpose of a qualified privilege is to protect speakers in circumstances where there is a need for full and unrestricted communication concerning a matter in which the parties have an interest or duty. * * * A qualified privilege exists when a statement is: made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest * * *. Further, the essential elements of a communication protected by qualified privilege are: [1] good faith, [2] an interest to be upheld, [3] a statement limited in its scope to this purpose, [4] a proper occasion, and [5] publication made in a proper manner and to proper parties only. Finally, if a defendant establishes all five elements for

application of a qualified privilege, a plaintiff can defeat its application only by showing by clear and convincing evidence that the defendant acted with actual malice.

(Internal citations omitted.)  *Mallory v. Ohio University*, 10th Dist. Franklin No.  01AP-278, 2001 Ohio App. LEXIS 5720, * 21-22.

{¶17} ODRC has put forth evidence that the statement made in the June 13, 2018 conduct report of plaintiff's involvement in a drug network at NCI is subject to a qualified privilege.  There is no doubt that the statement was made in connection with McGilton's job duties. The statement was made in good faith as it was made after receiving statements from confidential sources and reviewing video evidence suggesting plaintiff was involved in facilitating meetings and hiding drugs in the NCI law library.  The statement was made in a proper occasion and to proper parties, i.e., ODRC's staff members.  The statement was also limited in scope.

{¶18} In his affidavit, plaintiff avers that McGilton fabricated the conduct report with malice because he asserts that McGilton does not possess any confidential informant statements, JPay messages, telephone recordings, or video evidence. However, none of these statements by plaintiff are based on plaintiff's personal knowledge. Plaintiff provides no basis for a conclusion that he knows what materials constitute the sources upon which McGilton formed his conclusions. Other than his own self-serving statements, plaintiff has submitted no evidence showing McGilton lacks corroborating sources.  At no point does plaintiff explain how he could know what McGilton knew or how he could know that McGilton fabricated the sources.

{¶19} Plaintiff's evidence establishes that plaintiff was not involved in a drug network at NCI, that plaintiff passed information regarding drug activity at NCI to Poulton, and that plaintiff has never been involved in the conveyance of drugs inside NCI.  Plaintiff did not submit any evidence that the conduct report was shown to inmates at NCI or that the report was not the proper occasion to write the statement.  Plaintiff did

not submit evidence that McGilton was not authorized to make such statements, exceeded his job duties, or that the statements were not made in good faith. In short, none of plaintiff's evidence contradicts the evidence submitted by ODRC in support of a qualified privilege regarding the conduct report written on June 13, 2018. There is thus no genuine issue of any material fact and the uncontroverted facts show that ODRC has established the defense of qualified privilege. *See Watley* at ¶ 27-30 (Public policy concerns dictate that persons employed within the prison system, especially correction officers who are directly involved with the inmate population, be afforded a qualified privilege in reporting violations of prison rules in order to maintain the safety and security of the institution, its prisoners, and its employees.).

{¶20} "A qualified privilege may be defeated only by clear and convincing evidence of actual malice on the part of the defendant. *Jacobs v. Frank,* 60 Ohio St.3d 111, 114-115, 573 N.E.2d 609 (1991). 'Actual malice' is defined as 'acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.' *Id.*, at 116. Reckless disregard' is demonstrated by presenting 'sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of [its] publication." *Watley* at ¶ 32.

{¶21} While plaintiff has submitted evidence that disputes the truth of the statements, he has not submitted evidence of actual malice. "It is not sufficient for a libel plaintiff to show that an interpretation of facts is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity." *Id.*, at ¶ 33 (quotations omitted). Plaintiff's statement in his affidavit that McGilton "did, purposely, with actual malice write the June 13, 2018 conduct report being aware of the high probability of falsity * * *" is not based on personal knowledge and is not corroborated. Furthermore, plaintiff's assertion that McGilton wanted plaintiff removed from D1 without justifiable cause is also not based on personal knowledge. Plaintiff offers no details, other than his own self-serving statements, supporting the basis for his knowledge of

what McGilton knew and thought.  Similarly, plaintiff offers no support for his assertion that McGilton possesses no confidential sources.  Plaintiff has failed to produce facts that McGilton acted with malice when he wrote the conduct report.  Generally, "[a] party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact.  Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party."  *White v. Sears*, 10th Dist. Franklin No. 10AP-294, 2011-Ohio-204, ¶ 8.  As stated in *Watley,*

> We conclude that appellant failed to meet his burden of demonstrating the existence of a genuine issue of material fact as to the issue of whether Felts acted with actual malice. In his affidavit, appellant merely reasserted that which he alleged in his complaint, i.e., that Felts maliciously filed the false conduct report. Appellant has failed to produce any evidence that refutes appellee's claim that Felts filed the conduct report in good faith based upon his belief that appellant had violated prison rules. Appellant's self-serving affidavit, which is not corroborated by any evidence, is insufficient to establish the existence of a material issue of fact. *Watley* at ¶ 34.

Plaintiff's self-serving conclusory affidavit, absent corroborating evidence, is insufficient to create a genuine issue of material fact.  Based upon the unrebutted affidavit testimony of Jared McGilton, the only reasonable conclusion to draw is that the statements contained in the conduct report were not made with "actual malice" and are protected by a qualified privilege.  Accordingly, ODRC's motion shall be granted.

**Conclusion**

{¶22} Based upon the foregoing, the court concludes that there are no genuine issues of material fact and that ODRC is entitled to judgment as a matter of law. ODRC's motion for summary judgment shall be granted and judgment shall be rendered in favor of ODRC.

PATRICK M. MCGRATH
Judge

| | |
|---|---|
| ROBERT HILL | Case No. 2019-00632JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Gary Peterson |
| v. | |
| | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶23} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. All other pending motions are DENIED as moot. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

Filed January 27, 2020
Sent to S.C. Reporter 2/12/20