[Cite as *Barber v. Chestnut Land Co.*, 2016-Ohio-2926.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DEBRA A. BARBER, | ) | CASE NO. 15 MA 39 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CHESTNUT LAND COMPANY, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas of Mahoning County, Ohio
Case No. 13CV2368

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiff-Appellant:     Atty. Jonathan A. Good
Good & Good LLC
55 Public Square, Suite 2100
Cleveland, Ohio 44113

For Defendant-Appellee:     Atty. Kathryn A. Vadas
DiCaudio, Pitchford and Yoder, L.P.A.
209 South Main St., Third Floor
Akron, Ohio 44308

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  April 6, 2016

ROBB, J.

{¶1} Plaintiff-Appellant Debra A. Barber ("the employee") appeals the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of Defendant-Appellee Chestnut Land Company ("the employer"). She asserts the trial court erred as there are genuine issues of material fact on her claims of workers' compensation retaliation, disability discrimination, and failure to accommodate. For the following reasons, Appellant's assignments of error are overruled. The trial court's decision is affirmed.

STATEMENT OF THE CASE

{¶2} The employer operates Auntie Anne's Soft Pretzels. The employee began working in one of the stores in 1999. She worked her way up to manager, which is a salaried position required to work fifty hours per week. She generally worked five days a week from 8:00 a.m. to 6:00 p.m. (or 8-5 if she skipped her lunch). (Barber Depo. at 20-21). On September 29, 2008, the employee slipped on a wet spot at work. She caught herself before she fell but injured her back. She went to her physician, Dr. Black, the next day. The employer certified a workers' compensation claim for a lumbar sprain. The employee took off work a few days and then resumed her regular schedule.

{¶3} In early 2009, some changes occurred in the employer's headquarters such as a new chief operating officer and a new human resource officer. Payroll was instructed to be stricter about the fifty-hours per week required of managers; if they worked too few hours in a week, their paid leave time was deducted to cover the time. In addition, managers could not skip lunch in order to leave an hour early.

{¶4} The employee's next doctor visit was on January 21, 2009. Two days later, her doctor placed her on a work restriction involving a maximum workday of five hours. On January 30, he continued the restriction "for a couple more weeks." Additional treatment, such as physical therapy, was then requested under the workers' compensation claim. As the employee worked her regular shift for nearly four months after the injury and the doctor's notes mentioned conditions such as lumbar radiculitis and nerve entrapment, the employer was unsure if the requests

were related to the work injury. The employer forwarded the workers' compensation file to its third-party administrator.

**{¶5}** On April 1, 2009, Dr. Black ordered the restriction for two weeks, which was then extended until May 4, 2009. (Barber Depo. at 54). The employer entered a "wage continuation agreement" with the Bureau of Workers' Compensation ("BWC") so the employee received her full pay from April 3, 2009 through May 5, 2009. (Barker Depo. at 55-56; Good Aff. at ¶ 23). Thereafter, her salary was decreased in proportion to the hours worked (after all paid leave was used) as she continued working at the restricted five hours per day. (Good. Depo. at 196-197; Wheeler Depo. at 43-44). Dr. Black increased the daily restriction to six hours per day from June 4, 2009 through August 24, 2009, at which time the five-hour restriction was reinstituted. The employee exhausted her rights under the Family Medical Leave Act ("FMLA") in August 2009.

**{¶6}** In September 2009, the employee's attorney filed a motion with the BWC seeking an additional allowance for lumbar radiculitis. As a result, she was scheduled for a functional capacity evaluation, which she completed in November 2009. She reported that after five hours of work, she was in severe pain with weakness in both legs and hips. The resulting functional ability summary estimated that her walking and standing durational abilities were much lower than the average worker (and other categories such as reaching, handling, and crouching were higher than average). Counsel thereafter withdrew the lumbar radiculitis motion.

**{¶7}** She continued to treat with Dr. Black, who had provided her with a temporary handicap placard for her vehicle. Dr. Black's notes in late 2009 and early 2010 spoke of lower back pain, at times described as severe, tenderness in the back, and numbness extending to the legs. Dr. Black also mentioned a decreased range of motion. She was prescribed pain medication and an anti-inflammatory. He mentioned she may need an orthopedist and surgery but should try physical therapy.

**{¶8}** The employer had a policy under which the company would honor work restrictions if they were related to a workers' compensation injury. (Good Aff. at ¶ 50). As Dr. Black referred to a condition other than that allowed in the workers'

compensation claim, the employer initiated a dialogue with the employee under the American's with Disability Act ("ADA") to ascertain if she qualified as disabled.

{¶9} On February 24, 2010, the employer sent the employee a letter and packet, which included an essential functions analysis and an Interactive Process Questionnaire for her doctor to complete. A store manager description and an assistant store manager description were provided; an assistant store manager was expected to work 35-40 hours per week. The letter explained that when it appears an employee may have a disability, the employer and employee often enter into a dialogue to gather information to determine whether the employee's situation constitutes a disability under the ADA.

{¶10} The letter also stated that if there is a disability, then dialogue would help determine whether the employee will fully return to work or if reasonable accommodations can be provided to allow the employee to fulfill the essential functions of the job. It was noted the current accommodation of reduced hours was being made provisionally until a disability could be verified and a final accommodation may be different than the provisional accommodation.

{¶11} The employee provided the questionnaire to Dr. Black, and he completed it on March 30, 2010. Dr. Black returned the document to the employee, but she did not forward it to the employer. (Barber Depo. at 119). In May 2010, the employer resent the documents to the employee with a cover letter disclosing the employer had not received any of the information requested in the prior letter. The employee still did not forward the questionnaire completed by Dr. Black. She stated that she decided not to forward Dr. Black's report because she started seeing a new physician, Dr. Dunne. (Barber Depo. at 124-125).

{¶12} Her first visit to Dr. Dunne was April 15, 2010. His notes stated she was having difficulty with household activities and driving as she had intense pressure and pain from prolonged sitting and standing. He stated that five hours of standing increased her pain. He also mentioned a limited range of motion. Dr. Dunne filled out the interactive process questionnaire in May 2010. He provided it to the employee. The employee did not forward it to the employer; the employer did not

receive the questionnaire. The employee stated she asked the doctor's office to fax it to the employer (if it was ready) after the employer called her to inquire why she had not responded to their second letter. (Barber Depo. at 131-132).

{¶13} On June 9, 2010, the employee filed a motion for an additional allowance for a herniated disc at L5-S1 due to Dr. Dunne's conclusion that the fall at work caused a symptomatic disc herniation. In July 2010, a district hearing officer denied the motion finding the evidence failed to establish the September 28, 2008 work injury was the direct and proximate cause of the development of the condition. The employee appealed, and a staff hearing officer upheld the decision in September 2010. She appealed to the Industrial Commission.

{¶14} On October 9, 2010, the employee exhausted her FMLA rights for the year. The human resources manager and others at headquarters agreed to terminate the employee. They reasoned the employee's half-time hours should no longer continue as a manager is required to work fifty hours per week, the employee's restrictions were unrelated to a work injury, and her FMLA was exhausted. They decided to wait for the Industrial Commission's decision in case the hearing officer's decision was reversed.

{¶15} On October 21, 2010, the Industrial Commission affirmed the decision denying an additional allowance. Upon learning of the decision, the human resources manager scheduled a meeting with the employee for the next day. The employee was terminated at the October 22, 2010 meeting and was provided a termination letter. The letter explained the store manager position is a salaried fifty-hour per week position and the success of the business depends on the manager being present at the store. The letter continued:

> Due to the reason that you are not fulfilling the 50-hour week requirement of the position, you are relieved of your duties, effective today, Friday, October 22, 2010. As you aware, your Workers Compensation appeals have been denied and you have exhausted your Family and Medical Leave Act ("FMLA") benefit. Furthermore, there has been no response from you or your doctor as to our requests

for information, pursuant to the Americans with Disabilities Act, that we provided to you March 6, 2010 and again on May 15, 2010. This unfortunately leads us to this very difficult decision.

{¶16} After her termination, she filed a November 2010 motion for an additional allowance for a disc protrusion at L5-S1. This request was granted, and the additional condition was allowed by a district hearing officer and then a staff hearing officer. (Barber Aff. & Exhibit).

{¶17} In February 2011, the employee filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging the employer failed to provide a reasonable accommodation. The employer responded with its position statement. The EEOC asked the employee to file rebuttal evidence, but it is unknown if she complied.

{¶18} On April 20, 2011, the employee filed suit against the employer alleging wrongful termination under R.C. 4123.90 by retaliating for a workers' compensation claim. (She had provided the employer with written notice of a claimed violation of the statute within ninety days of her termination as required by R.C. 4123.90.) She voluntarily dismissed the suit on August 23, 2012. She refiled the action on August 23, 2013. She amended the complaint on March 18, 2014 to add claims for disability discrimination and failure to accommodate.

{¶19} On August 1, 2014, the employer filed a motion for summary judgment. As to the workers' compensation retaliation claim, the employer argued there was no evidence or inference of a retaliatory motive. The employer urged that even if there was a prima facie case, they had a legitimate non-retaliatory reason and the employee cannot show that the reason was pretextual.

{¶20} Concerning the disability claims, the employer first argued there was no evidence the employee was disabled as a mere medical diagnosis does not equate with evidence of a substantial impairment. The employer also claimed that even if she were disabled, they did not know or have reason to know of her disability. Emphasis was placed on the employee's failure to forward the interactive process questionnaires to the employer after her physicians completed them; they repeatedly

voiced a desire to learn whether her condition rose to the level of a disability under the law, but she failed to assist in this endeavor. The employer urged that if the employer is not responsible for the breakdown in the interactive process dialogue, there can be no liability for failure to accommodate.

{¶21} The employee responded to the motion for summary judgment urging that a reasonable juror could conclude: the employer retaliated against her for pursuing her workers' compensation right since they used her workers' compensation claim as a factor in the termination decision; the employer discriminated against her because of her disability; and the employer failed to reasonably accommodate her by letting her remain store manager at five hours per day (or offering her another position such as assistant manager).

{¶22} The employee noted she was terminated the day after her appeal to the Industrial Commission failed. She pointed to the contents of the termination letter, signed by the chief operations officer, stating she was terminated and referring to the denial of her workers' compensation appeals. She emphasized the employer's human resource manager admitted that the BWC's denial of the workers' compensation claim seeking an additional condition was a factor in the termination. (Good Depo. at 166-170). The employee stated that besides creating a reasonable inference, this constitutes direct evidence of the retaliatory state of mind.

{¶23} The employee urged that the fifty-hour work week was a pretext for her termination. In her February 2010 review, she was rated as exceeding expectations in the categories of: quality of work; quantity of work; dependability; attendance and punctuality; job knowledge; and safe work practice. Under quantity of work, it was noted that she does a good job of getting her work done efficiently given the hours she is able to work. (She was rated as meeting expectation in some categories including overall store management, individual effectiveness, and initiative; she was rated as needing improvement in leadership, employee development, and service focus.)

{¶24} The employee also noted the termination letter incorrectly suggested her appeal rights were over at the time of her termination (as she had 60 days to

appeal the Industrial Commission's decision to the trial court). She also pointed out that (after her termination) a new motion for additional allowance for her L5-S1 disc protrusion was filed and allowed by a district hearing officer and then a staff hearing officer. (Barber Aff. & Exhibit).

**{¶25}** The employee pointed to testimony indicating other managers were not fired for failing to work fifty-hour weeks. (Good Depo. at 174) (stating she did not think anyone else was fired for failing to work 50 hours); (Sammartino Depo. at 112-113) (stating that he could not recall a store manager being terminated for falling short of fifty hours in a week). However, those managers did not continually work a half-time schedule. Rather, when a manager would occasionally fall short, they would receive a call and their accumulated leave would be used for any lacking hours. (Sammartino Depo. at 112-113; Wheeler Depo. at 42-43). There was also testimony that there were managers who managed two stores (meaning they were only at an individual store half of the time). (Henry Depo. at 60).

**{¶26}** Regarding her disability discrimination claim, the employee urged that she had a physical impairment in the form of an L5-S1 disc bulge that substantially limited major life activities such as working. Since she was limited to five hours per day and maintained that limit for approximately 21 months, she argued the employer had reason to know of her disability. She argued that although the employer did not receive the questionnaires (one of which she thought a doctor faxed), the employer had knowledge of her disability in various other ways. For instance, medical forms and reports were filed in her workers' compensation claim related to the May 2010 request for an additional allowance for a herniated disc at L5-S1 (which was denied).

**{¶27}** She said she did not act in bad faith in the interactive process for determining a disability. She complained the employer should have re-advised her that they failed to receive the information. She characterized her modified schedule for nearly two years as a reasonable accommodation that was not a burden on the employer.

**{¶28}** The magistrate denied the employer's request for summary judgment. In a December 8, 2014 decision, the magistrate explained that construing the

evidence most strongly in favor of the employee, a reasonable trier of fact could find evidence of retaliatory motive in violation of R.C. 4123.90, adverse action as a result of the employee's disability, and a failure to reasonably accommodate her.

{¶29} On December 17, 2014, the employer filed objections to the magistrate's decision urging the magistrate erred in concluding there were factual questions on which a jury could rule in favor of the employee on the three claims. The employer stated that the magistrate failed to set forth all of the pertinent facts and relied on insignificant facts in its ruling.

{¶30} On February 13, 2015, the trial court sustained the objections and granted summary judgment in favor of the employer. As to the retaliation claim, the court stated the employer provided a legitimate non-discriminatory reason and the facts relied upon by the employee did not support a conclusion that the reason was pretextual. The court ruled the employer's admission (the loss of the workers' compensation appeal was a factor in her termination) does not lead to an inference that the filing and pursuit of the workers' compensation claim was a factor in the termination. The court found testimony did not show that other managers were not fired for falling short of 50 hours per week. The court also concluded the employee did not show a prima facie case of workers' compensation retaliation.

{¶31} On the disability discrimination claim, the court found no genuine issue as to whether the employee was disabled or as to whether the employer knew or had reason to know of her disability. The court said there was no evidence that a major life activity was significantly restricted in manner and duration. The court also stated the employee failed to complete the interactive questionnaire that would have potentially put the employer on notice of her disability.

{¶32} Regarding the failure to accommodate claim, the trial court reiterated there was no evidence the employee was disabled and thus no need to accommodate her. The court added that her own actions (or those of her doctor) prevented the employer from gathering information to determine whether she was substantially limited in her activities. The court found no evidence the breakdown in the interactive process was traceable to the employer.

**{¶33}** The employee filed a timely appeal to this court. Appellant lists multiple assignments of error; however she breaks her analysis into sections corresponding to her claims of workers' compensation retaliation, disability discrimination, and failure to accommodate. We begin with the general law applicable to our review of summary judgments.

SUMMARY JUDGMENT

**{¶34}** Summary judgment can be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The movant has the initial burden to show that no genuine issue of material fact exists. *Byrd v. Smith*, 110 Ohio St.3d 24, 26-27, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).

**{¶35}** The non-moving party then has a reciprocal burden. *Id.* The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E). Civ.R. 56 must be construed in a manner that balances the right of the non-movant to have a jury try claims and defenses that are adequately based in fact with the right of the movant to demonstrate, prior to trial, that the claims and defenses have no factual basis. *Byrd*, 110 Ohio St.3d 24 at ¶ 11, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**{¶36}** In determining whether there exists a genuine issue of material fact to be resolved, the court is to consider the evidence and all reasonable inferences to be drawn from that evidence in the light most favorable to the non-movant. *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11. *Leibreich v. A.J. Refrig., Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993) (doubts are to be resolved in favor of the non-movant). A court "may not weigh the proof or choose among reasonable inferences." *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, 18 O.O.3d 354, 413 N.E.2d 1187 (1980).

**{¶37}** "The material issues of each case are identified by substantive law." *Byrd*, 110 Ohio St.3d 24 at ¶ 12. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We consider the propriety of granting summary judgment under a de novo standard of review. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

<u>WORKERS' COMPENSATION RETALIATION</u>

**{¶38}** Workers' compensation retaliation is a statutory cause of action. R.C. 4123.90 provides in pertinent part:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

**{¶39}** The Ohio Supreme Court ruled a complaint sufficiently alleges this cause of action when it stated the employee was injured on the job, filed a workers' compensation claim, and was discharged in violation in R.C. 4123.90. *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 479 N.E.2d 275 (1985), syllabus (where defendant argued the complaint had to specifically allege plaintiff was discharged in retaliation for filing the claim). Over the years, various appellate cases have used this holding in outlining three elements for a prima facie case of retaliation under R.C. 4123.90. *See, e.g., Cunningham v. Steubenville Orthopedics & Sports Medicine, Inc.,* 175 Ohio App.3d 627, 2008-Ohio-1172, 888 N.E.2d 499, ¶ 56 (7th Dist.); *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 337-338, 697 N.E.2d 1080 (5th Dist.1997).

**{¶40}** The *Wilson* Court was answering the question of whether a particular complaint specifically alleging these three items could withstand a motion to dismiss or whether the complaint had to specifically allege the plaintiff was discharged in retaliation for filing the workers' compensation claim. As a result, the case has been

read as merely validating one particular complaint's claims rather than establishing the necessary elements for a prima facie case under the statute.

{¶41} Therefore, some courts outline the test for a prima facie case of retaliation differently, with more precision in the final element. Instead of merely stating the discharge was in violation of R.C. 4123.90, the modified statement of the test requires a showing of a causal connection between the activity and the discharge (or other adverse employment action as the case may be). *See, e.g., Ferguson v. SanMar Corp.*, 12th Dist. No. CA2008-11-283, 2009-Ohio-4132, ¶ 15-17; *Sidenstricker v. Miller Pavement Maintenance, Inc.*, 10th Dist. Nos. 00AP-1146, 00AP-1460, 2001-Ohio-4111.

{¶42} This test is based on the federal test used in retaliation cases, which was adopted by the Ohio Supreme Court in applying a different retaliation statute, R.C. 4112.02(I). That statute defines an unlawful discriminatory practice as discriminating in any manner against another for opposing any unlawful discriminatory practice defined in that section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under R.C. 4112.01 to 4112.07. R.C. 4112.02(I).

{¶43} The Supreme Court explained that in order to establish a prima facie case of retaliatory discharge under that statute, the employee must show: (1) the employee engaged in protected conduct; (2) the employer knew about the protected conduct; (3) the employer took adverse employment action; and (4) a causal connection between the activity and the adverse employment action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 274, ¶ 13 (noting that the Ohio statute is similar to the federal ADA and applying the federal test).

{¶44} The *Ferguson* and *Sidenstricker* cases set forth a prima facie case of retaliation under R.C. 4123.90 using the following consolidated *Greer-Burger* formula: (1) the employee engaged in protected activity; (2) the employer took adverse employment action; and (3) there is a causal connection between the protected activity and the discharge. *See also Buehler v. AmPam Commercial Midwest*, 1st Dist. No. C-060475, 2007-Ohio-4708, ¶ 23 (using injury on the job as the first

element).[1]  The element regarding knowledge of the protected conduct would be part of the causal element because the activity could not cause the adverse employment action if the employer did not know about it.

**{¶45}** In any event, the parties agree that a causal connection is part of the prima facie case even when utilizing *Wilson* for the framework.  The courts applying *Wilson* consistently explain that a causal connection must be established between the filing or pursuit of the workers' compensation claim and the adverse employment action and that a retaliatory state of mind is part of showing the causal connection. *Lawrence v. City of Youngstown*, 7th Dist. No. 09MA189, 2012-Ohio-6237, ¶ 23; *Cunningham,* 175 Ohio App.3d 627 at ¶ 72.

**{¶46}** Under the language of the statute itself, being discharged in violation of R.C. 4123.90 (the third allegation in *Wilson*) requires a showing of a causal connection between the activity protected by the statute and the adverse employment action, which necessarily entails a retaliatory state of mind.  *See* R.C. 4123.90 (certain adverse employment action taken "because the employee" filed or pursued a workers' compensation claim).  This coincides with the *Greer-Burger* factors ranging from knowledge of protected activity through the casual connection between that activity and the adverse employment action.  Here, the parties take issue with the third *Wilson* allegation, which is essentially encompassed in the *Greer-Burger* test. *See Lawrence,* 7th Dist. No. 09MA189 at ¶ 22, citing *Greer–Burger*, 116 Ohio St.3d 324 at ¶ 13–14.

---

[1] A current issue in the Ohio Supreme Court is whether the language of R.C. 4123.90 (and the *Wilson* case) requires an injury on the job or just the filing or pursuit of a workers' compensation claim in establishing a prima facie case.  *See Onderko v. Sierra Lobo*, 141 Ohio St.3d 1451, 2015-Ohio-239, 23 N.E.3d 1194.  It could be asked whether the protected activity in the *Greer-Burger* test is simply the pursuit of a workers' compensation claim or the pursuit of a workers' compensation claim when the injury can be shown as having occurred on the job.  We note that in providing reasons for termination other than the pursuit of a worker's compensation claim, the Supreme Court listed an employer's reasonable suspicion an injury is not job-related as a valid reason.  *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 157, 2011-Ohio-2723, 950 N.E.2d 938, 943, ¶ 10.

However, the employer expressly does not dispute that the employee suffered an injury on the job here.  The employee's initial workers' compensation claim for a workplace injury was certified by the employer (for lumbar strain/sprain).  In addition, although they contested her request for an additional allowance (which was then denied administratively), her subsequent request for a different additional allowance was successful.

**{¶47}** The disputed issue is whether the employee provided evidence of retaliatory discharge by showing a causal connection between her pursuit of her workers' compensation claim and her discharge. A retaliatory discharge claim can be supported by direct or indirect evidence. *Lawrence*, 7th Dist. No. 09MA189 at ¶ 14.

**{¶48}** The shifting of burdens is different depending upon whether there is direct or indirect evidence of the causal connection. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). *See also Lawrence*, 7th Dist. No. 09MA189 at ¶ 14, 19-22. Direct evidence would include an actual statement by the employer admitting the motive to terminate the employee for filing a workers' compensation claim or for filing an appeal in the workers' compensation case. Where there is direct evidence, the burden shifts to the employer to show the same decision would have been made in the absence of the impermissible motive. *See Ceglia v. Youngstown State Univ.*, 10th Dist. No. 14AP-864, 2015-Ohio-2125, ¶ 16 (in a discrimination case).

**{¶49}** If an inference is required to show the causal connection, the evidence is considered indirect. Where indirect evidence establishes the causal connection by inference, a presumption of retaliatory discharge arises and the *McDonnell-Douglas* burden-shifting formula is applied. *Greer-Burger*, 116 Ohio St.3d 324 at ¶ 14, applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). If a rational inference of retaliation arises, the burden shifts to the employer to set forth a legitimate non-retaliatory reason for the discharge. *Id.*; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255-256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (this is the burden to rebut the presumption that arose and to frame the factual issue with sufficient clarity so the plaintiff will have a fair opportunity to show pretext).

**{¶50}** If the employer offers a legitimate non-retaliatory reason, the burden then shifts back to the employee to show the reason proffered by the employer is pretextual and the real reason for the discharge was retaliation for pursuit of the workers' compensation claim. *Id.,* citing *Burdine,* 450 U.S. at 256. This involves the prima facie case again, but "the factual inquiry proceeds to a new level of specificity." *Burdine,* 450 U.S. at 255.

**{¶51}** The employee first contends she presented direct evidence of the employer's retaliatory state of mind. She points to the termination letter and the testimony of the human resource manager. The termination letter stated: "Due to the reason that you are not fulfilling the 50-hour week requirement of the position, you are relieved of your duties, effective today, Friday, October 22, 2010. As you are aware, your Workers Compensation appeals have been denied and you have exhausted your Family and Medical Leave Act ('FMLA') benefit."

**{¶52}** The human resource manager testified she and others at headquarters decided to terminate the employee because her FMLA was exhausted, her restrictions appeared to be unrelated to a work injury, and her half-time hours should no longer continue since a manager is required to work fifty hours. She stated that they decided to wait for the Industrial Commission's decision to make sure the hearing officer's decision was affirmed. She admitted the administrative decisions were part of the motivation for the employee's discharge (as their policy is to assist those whose work restrictions are the result of a work injury).

**{¶53}** This court concludes that such testimony was not direct evidence of retaliatory discharge. A statement is not direct evidence if it requires the fact-finder to draw further inferences to support the retaliatory animus. *See Ceglia*, 10th Dist. No. 14AP-864 at ¶ 23. The intent to retaliate for filing or pursuing the claim must be evident on the face of the statement. The employer did not state the employee was being fired for filing a workers' compensation claim or for further pursuing her claim by seeking treatment or requesting an additional allowance. Rather, the direct evidence showed she was discharged for being unable to work fifty hours per week where the cause of the work restriction did not appear to be work-related. The administrative decisions merely answered the question of whether the work restriction was the result of a work-related injury. In fact, it could be said the direct evidence demonstrated the employee was actually *retained* because she filed and

pursued her claim and she would have been discharged much sooner if not for the uncertainty as to whether her restricted hours were the result of the workplace injury.[2]

**{¶54}** We now turn to evaluating the indirect evidence utilized by the employee to demonstrate motive in constructing a prima facie case of retaliatory discharge and in showing pretext. It has been stated that the burden to establish the prima facie case by indirect evidence is not onerous. *See, e.g., Russell v. University of Toledo,* 537 F.3d 596, 609 (6th Cir.2008) (retaliation case); *Dover v. Carmeuse Natural Chems.,* 5th Dist. No. 10-CA-8, 2010-Ohio-5657, ¶ 43 (workers' compensation retaliation case). *See also Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (disparate treatment case). A "smoking gun" is not required. *Lawrence,* 7th Dist. No. 09MA189 at ¶ 23, quoting *Kent v. Chester Labs, Inc.,* 144 Ohio App.3d 587, 592, 761 N.E.2d 60 (1st. Dist.2001).

**{¶55}** Some relevant factors in considering whether an inference of causal connection arises include punitive actions (such as bad performance reports or a change in salary level) occurring immediately after a claim is filed, the time period between the filing of the claim and the discharge, recent hostile attitudes, and whether a legitimate reason existed for the discharge. *See, e.g., Kaufman v. Youngstown Tube Co.,* 7th Dist. No. 09MA8, 2010-Ohio-1095, ¶ 42. As the latter factor involves the employer's burden after a prima facie case is demonstrated, that factor (consideration of the proffered reasons) is more related to the "new level of specificity" encompassed by the pretext inquiry. For instance, the employer set forth a legitimate, non-retaliatory reason for the termination: the inability to work the fifty hours per week expected of a store manager. Whether this was the real reason for

---

[2]It is noted here that an employer is not prohibited from terminating an employee for being unable to work the position even where the reason is a work-related injury (and even when the employee is collecting temporary total disability benefits at the time). *See Bickers v. W. & S. Life Ins. Co.,* 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201 (providing that R.C. 4123.90 is the exclusive remedy which cannot be overridden by common law public policy discharge to include the firing of those collecting benefits). Still, the employer had a policy against terminating those with restrictions that were the result of a workplace injury. Prior to the *Bickers* decision, the law on the matter was unclear if a worker was receiving benefits such as temporary total disability (which may have been the reason for the employer's policy here). *See id.* at ¶ 1-2, 9-16, limiting and clarifying *Coolidge v. Riverdale Local School Dist.,* 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61.

the discharge entails the employee's burden to show the reason was pretextual. Before reaching this stage, we return to the temporal proximity arguments.

**{¶56}** The employee emphasized the temporal proximity of the termination to receipt of the Industrial Commission's decision: the employer called the employee the same day, and the termination meeting was held the next day. There is dispute over whether temporal proximity alone can permit the inference of a causal connection to arise.[3] However, we need not analyze that issue as the employee does not rely on the temporal proximity concept alone and/or the event from which the employee is measuring "very close" temporal proximity is not the pertinent event.

**{¶57}** The temporal proximity of the termination was not very close in time to the filing of the claim, the filing of the first motion for an additional allowance, or the filing of the second motion for an additional allowance. To recap, she filed for workers' compensation due to a work injury in September 2008, and the employer certified her back sprain claim. Her twenty-five-hour work restriction began in late January of 2009. A wage agreement was in place until May 2009.

**{¶58}** In September 2009, the employee sought an additional allowance, which she then withdrew. She sought a different additional allowance in May 2010,

---

[3] The Sixth Circuit reconciled two lines of retaliation cases by stating: (1) if the adverse employment action is "very close" in time to when the employer learned of the protected activity, then temporal proximity alone can satisfy a prima facie case; but (2) if time elapses, then temporary proximity must be coupled with other relevant conduct to establish causality. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008). The federal court found the United States Supreme Court may have accepted that temporal proximity is sufficient in a narrow set of cases. *Id.* at 524-525, citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'."). We thereafter stated that close temporal proximity alone may be significant enough to constitute evidence of a causal connection. *Bahar v. Youngstown*, 7th Dist. No. 09MA55, 2011-Ohio-1000, ¶ 7-8. These are general retaliation rather than workers' compensation retaliation cases.

The Ohio Supreme Court ruled: "Because a discharge could be for reasons other than those related to workers' compensation, such as a reasonable suspicion that the injury was not job related, a disregard by the employee for the employer's safety rules, or an immediate need for a replacement employee, *no presumption of retaliation arises from the fact that an employee is discharged soon after an injury.*" *Sutton*, 129 Ohio St.3d 153 at ¶ 10 (emphasis added). This may support our prior holding: "While the timing of the termination can contribute to an inference of retaliation, temporal proximity alone is insufficient to support a finding of a causal connection." *Cunningham*, 175 Ohio App.3d 627 at ¶ 73, quoting *Buehler v. AmPam Commercial Midwest*, 1st Dist. No. C-060475, 2007-Ohio-4708, ¶ 24–25.

which was denied in July 2010. She lost her appeal to a staff hearing officer on September 28, 2010. She lost her appeal to the Industrial Commission on October 21, 2010 and was terminated the next day. The event cited by the employee to show close temporal proximity is not the pursuit of the claim but the final administrative resolution of the claim.

{¶59} Besides the temporal proximity of the termination to the loss of the appeal to the Industrial Commission, the employee also suggests an inference of retaliatory motive arises from the employer's statement that the loss of the employee's appeals factored into the employee's termination (because this meant the injury was not work-related). Notably, this is not a case where the employee was terminated merely for losing worker's compensation appeals. Rather, it is the loss of the appeals combined with the inability to return to work full-time.

{¶60} The question becomes whether the employer's claim she was terminated for being unable to work fifty hours per week where her injury was believed to be unrelated to work would allow a reasonable juror to find that she was actually terminated for pursuing workers' compensation benefits. The employee's position as store manager was uniformly a fifty-hour salaried position. The employee was permitted to work a reduced twenty-five hour per week schedule for nearly twenty-one months. During that time, it was contested whether the injury was work-related.

{¶61} As aforementioned, there is no requirement that an employer keep an employee merely because they suffered a work-related injury. This employer had a policy that refrained from terminating those whose restrictions were work-related. Once the administrative appeals were concluded and the employee could not return to work more than half-time, the employer implemented its decision to terminate the employee. The pursuit of further workers' compensation benefits could be seen as extending the employee's employment under the employer's policy. That is, if the employee had not pursued the worker's compensation claim, her continued employment at half-time may have been terminated much earlier.

{¶62} We conclude: (1) being discharged after losing the final level of administrative workers' compensation appeals is not sufficient to establish a prima facie case of retaliation for pursuing workers' compensation benefits where the managerial employee remains unable to work more than half of the schedule required for managers; and/or, (2) regardless of whether a prima facie case of retaliation was sufficiently demonstrated, there was nothing besides speculation to show that the legitimate non-retaliatory reasons provided by the employer were pretextual.

{¶63} Pretext can be demonstrated by showing the reason has no basis in fact, did not actually motivate the employer, or was insufficient to motivate the discharge. *See also Lawrence*, 7th Dist. No. 09MA189 at ¶ 35. The fact the employee was required to work fifty hours but cannot work fifty hours is not disputed. (Barber Depo. 20). The employee contested claims of a neutral absenteeism policy and stated she did not have an attendance problem. However, there was no claim she missed the days she was scheduled to work (or rather the days that she scheduled herself to work). Instead, the uncontested premise is she was hired to work fifty hours per week as a store manager and, even after twenty-one months of working twenty-five hours per week, she was unable to return to her full-time schedule.

{¶64} The employee points to a statement regarding some managers occasionally falling short of the fifty-hours per week. Yet, she testified she was expected to work 50 hours per week. It was explained that the requirement was more strictly enforced after the new management team began at the end of 2008. In addition, there was no evidence that any of the managers who fell short were more than a few hours short on occasion; and, the evidence established that the payroll clerk would deduct their accrued leave to attain the fifty hours on those occasions. Therefore, those managers who happened to fall short were still on the payroll at fifty hours.

{¶65} Furthermore, there was no evidence other managers were working half-time schedules. The employee points to testimony that there are some managers

who oversee two stores, suggesting that her store does not require a fifty-hour per week manager. Yet, there was no evidence those stores are equivalent in sales as this employee's store. And, those situations involved a manager who was a full-time employee and who worked fifty hours per week as required by the job description.

**{¶66}** The employee also claimed her 2010 performance review and an award for her store's use of butter showed the store was being run fine even with her working half-time. This evidence does not mean an employer cannot prefer to maintain its policy that managers work a full-time schedule of fifty-hours per week.

**{¶67}** In summary, the temporal proximity involved in this case combined with the other evidence used to raise an inference does not sufficiently establish pretext. The employee's initial workers' compensation claim was filed in September 2008 and certified by the employer. The testimony established the employee's FMLA benefits were exhausted on October 9, 2010 and she could not return to her full-time schedule. This prompted the decision to terminate her. Implementation of that decision was delayed as the employer awaited the Industrial Commission's final decision on the cause of injury. There was no evidence that hostile attitudes were directed at the employee, and no punitive actions were taken prior to the discharge.

**{¶68}** We have upheld the granting of summary judgment where an employee suffered a permanent-partial work-related injury, was initially given light duty, and (when there was no light duty work left some months later) was terminated when he could not get a full doctor's release. *Kaufman*, 7th Dist. No. 09MA8 at ¶ 44 (finding no causal connection besides the plaintiff's speculation). *See also Lawrence*, 7th Dist. No. 09MA189 at ¶ 43 (after finding lack of prima facie case, we alternatively stated that the plaintiff failed to show the employer's reason was pretextual). This court finds it is mere speculation to argue that the legitimate reason proffered for the discharge (the combination of a half-time schedule and a non-work related injury) was pretextual and mere speculation to assert that the actual motive for her firing was retaliation for pursuing further workers' compensation benefits two years after the initial claim was filed. This court concludes that, even if the employee met the

less onerous burden of producing a prima facie case, the speculation proffered to show pretext allows the upholding of summary judgment on this claim.

## DISABILITY DISCRIMINATION

{¶69} Pursuant to R.C. 4112.02(A), it is an unlawful discriminatory practice for an employer because of the disability of any person "to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." This statute is similar to the federal ADA, and Ohio courts are permitted to use the federal regulations and cases interpreting the federal statute. *See Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998). The employee set forth a claim of disability discrimination based upon her termination and a claim of failure to accommodate under R.C. 4112.02(A). *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir.1997) (plaintiff must prove that he has a disability, he is "otherwise qualified" for the job, and the employer either refused to make a reasonable accommodation for his disability or made an adverse employment decision regarding him because of his disability).

{¶70} As to the employee's claim she was fired because she was disabled, a prima facie case is made by showing: (1) she was disabled; (2) an adverse employment action was taken by an employer, at least in part, because she was disabled; and (3) she can safely and substantially perform the essential functions of the job in question even though disabled. *Hood v. Diamond Products, Inc.*, 74 Ohio St.3d 298, 302, 658 N.E.2d 738 (1996). *See also Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir.2011) (plaintiff makes prima facie by showing: she was disabled, she was otherwise qualified for the position with or without reasonable accommodation, an adverse employment action was taken, the employer knew or had reason to know of the disability, and the position remained open while the employer sought other applicants or she was replaced).

{¶71} Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. *Hood*, 74 Ohio St.3d at 302. A legitimate, nondiscriminatory

reason includes the inability of the employee to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question. *Id.*, citing Ohio Adm.Code 4112-5-08(D)(4),(E). If a nondiscriminatory reason is proffered, the burden shifts back to the employee to show that the employer's stated reason was a pretext for impermissible discrimination. *Id.* The Supreme Court affirmed a summary judgment entered in favor of the employer where the reason for the employee's termination was taking extra unauthorized breaks; the Court found this reason was not evidence the employee was fired for a certain physical condition that required the breaks. *See Allen v. totes/Isotoner Corp.*, 123 Ohio St.3d 216, 2009-Ohio-4231, 915 N.E.2d 622, ¶ 6, 8 (three-justice plurality), ¶ 42, 43, 45 (two justices concurring)

**{¶72}** As to the employee's failure to accommodate claim, a prima facie case involves a showing that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position (with or without reasonable accommodation); (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir.2004). The burden is placed on the plaintiff to propose an accommodation that is objectively reasonable. *Keith v. County of Oakland*, 703 F.3d 918, 927 (6th Cir.2013). If the prima facie case is made, the employer has the burden to demonstrate such an accommodation would impose an undue hardship on the conduct of the employer's business. *Id. See also* Ohio Adm.Code 4112-5-08(E)(1); *Crosier v. Mfg. Co.*, 9th Dist. No. 19863 (Feb. 28, 2001) ("While employers are required to make reasonable accommodations for an injured worker, at a certain point, holding a job open becomes unreasonable.").[4]

---

[4] The employer is to initiate an informal, interactive process with the employee before denying a reasonable accommodation to a disabled employee. *See, e.g., DeCesare v. Niles City School Dist. Bd. of Edn.*, 154 Ohio App.3d 644, 2003-Ohio-5349, 798 N.E.2d 655, ¶ 25-26 (11th Dist.); *Shaver v. Wolske & Blue*, 138 Ohio App.3d 653, 664, 669, 742 N.E.2d 164 (10th Dist.2000) (employer need only show good faith effort to engage with the employee about the reasonable accommodation). *See also Eisman v. Clark Cty. Dept. of Human Servs.*, 2d Dist. No. 02CA0031, 2002-Ohio-6781, ¶ 22. Further principles include: both parties have a duty to participate in good faith in the mandatory interactive process; where participation is lacking, the cause of the breakdown should be isolated in order to assign responsibility for it; and if an employee refuses to participate in good faith or withholds essential information, the employer is not liable under the ADA for failure to accommodate. *See, e.g* 485 F.3d 862, 871 (6th Cir.2007). *See also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir.1999); *Baert v. Euclid Beverage, Ltd.*, 149 F.3d 626, 633–34 (7th Cir.1998); *Taylor v. Principal Fin. Group,, Nance v. Goodyear Tire & Rubber Co.,* 527 F.3d 539, 556 (6th Cir.2008); *Kleiber v. Honda of America Mfg., Inc., Inc.*, 93 F.3d 155, 165 (5th Cir.1996); *Kovac v. Superior Dairy, Inc.*, 998 F.Supp.2d 609, 619-20 (N.D.Ohio 2014).

**{¶73}** The threshold issue regarding the employee's claims asserted under R.C. 4112.02(A) is whether the employee was disabled. Disability is statutorily of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13).

**{¶74}** The employee states she has physical impairment that substantially limits a major life activity. There is no dispute that she suffered a physical impairment. *See* R.C. 4112.01(A)(16)(i) (any physiological disorder or condition affecting the neurological or musculoskeletal systems), (iii) (diseases and conditions including orthopedic impairments). There is also no dispute (for purposes of summary judgment) that her impairment limited the major life activity of working. The dispute is whether her impairment "substantially" limited her work activity.

**{¶75}** The parties agree that we can look to federal interpretations of the ADA in regulations and case law for guidance in interpreting terms used in Ohio law in this field. *See McGlone*, 82 Ohio St.3d at 573, applying former 29 C.F.R. § 1630.2(j)(3)(i) (an EEOC regulation used to determine if an employee was substantially limited in his work). The parties rely on the regulatory definition existing at the time of the employee's October 2010 termination.

**{¶76}** That regulation provided that an impairment could substantially limit a major life activity only if the individual was "[u]nable to perform a major life activity that the average person in the general population can perform" or if the individual is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 480, 491, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999), quoting former 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

**{¶77}** The employee's brief focuses on the latter option and states the manner or duration that she could work was significantly restricted compared to that of the average person. The employer replies that the manner of work was not significantly restricted as the employee did not state she could not perform the various tasks

involved in her job but only asserted a restriction as to the number of hours worked per day. Still, the duration was limited, leaving us with the question of whether it was "substantially" limited compared to the average person in the general population.

**{¶78}** When referring to the major life activity of working, the regulation used a "specialized definition" of the term substantial limitation as being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Sutton*, 527 U.S. at 491, quoting former 29 C.F.R. § 1630.2(j)(3)(i); *McGlone*, 82 Ohio St.3d at 573, quoting 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

**{¶79}** The employer suggests any inability relates to only a particular job as opposed to a class of jobs or a broad range of jobs in various classes. However, a work restriction of five hours per day due to back issues where the employee worked at a job entailing continual standing would entail a class of jobs or a broad range of jobs in various classes. This brings us back to whether the employee was substantially limited in working.

**{¶80}** Effective January 1, 2009, Congress amended the ADA. The Sixth Circuit observed Congress expressly rejected regulations that define the term "substantially limits" as meaning "significantly restricted" which Congress expressed was "too high a standard" and was "inconsistent with congressional intent." *Verhoff v. Time Warner Cable, Inc.*, 299 Fed. Appx. 488 (6th Cir.2008) fn. 2, citing ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553, § 2(a)(9).

**{¶81}** The new statute set forth rules of construction, one of which states the definition of disability shall be construed in favor of broad coverage to the maximum extent permitted by the terms of that statute. 42 U.S.C. § 12102(4)(A). Another rule of construction set forth in the statute directs: "The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." 42 U.S.C. § 12102(4)(B). The codified findings and purposes are not specific as to interpreting the term "substantially limits."

**{¶82}** Yet, the uncodified findings and purposes of the ADA Amendments Act of 2008 say the United States Supreme Court holdings in *Sutton* and its progeny narrowed the broad scope of protection intended by Congress and interpreted the term "substantially limits" to impose too great a degree of limitation on the individual. Pub.L. No. 110-325, § 2(a)(4)-(7), (b)(2)-(5). Those findings mention that the regulation defining the term "substantially limits" was "inconsistent with congressional intent, by expressing too high a standard." Id. at § 2(a)(9). One of the purposes of the act was to express Congress' expectation that the regulation defining "substantially limits" as "significantly restricted" would be revised to be consistent with the amended act. *Id.* at § 2(b)(6). (This was what the Sixth Circuit was referring to in *Verhoff*.)

**{¶83}** It was not until March 25, 2011 that a corresponding regulation was enacted. This regulation reiterates that the term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 29 C.F.R. § 1630.2(j)(1)(i). The new regulation states the term "substantially limits" is not meant to be a demanding standard. *Id. See also* 29 C.F.R. § 1630.2(j)(1)(iv) ("substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard applied prior to the amended ADA). Currently, the regulation provides that an impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*

**{¶84}** "Nonetheless, not every impairment will constitute a disability within the meaning of this section." *Id.* The new regulation recognizes that the determination of whether an impairment substantially limits a major life activity requires an individualized assessment. In making the determination, it may be useful to consider facts such as condition, manner, or duration (compared to most people in the general population), and this can include consideration of the pain experienced when

performing a major life activity and the length of time a major life activity can be performed. 29 C.F.R. § 1630.2(j)(4)(i)-(ii).

{¶85} The statutory changes became effective before the employee's termination. However, the regulation was not passed until after the employee was terminated. In any event, the parties do not mention the statutory amendments to the ADA. Ohio courts can, but need not, apply federal cases and regulations interpreting terms used in Ohio law. Most notable, the Ohio statute was not changed to instruct on a lesser standard. Even where federal material is viewed, the positions espouses therein is only adopted where the statutes are similar. *See, e.g., Genaro v. Cent. Transport*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). The Ohio Supreme Court used prior federal regulations and cases interpreting the term "substantially limits" as requiring a significant restriction. *See McGlone*, 82 Ohio St.3d at 573.

{¶86} The fact that a federal statute changed prior to the termination directing the federal regulations to be modified to a lesser standard than "significantly restricted" does not mandate state courts to change their own interpretation of a certain term, especially in cases involving discharges that occurred prior to the enactment of the new regulations. *This is especially true where the parties do not ask for the application of the new federal statutory standards. See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 194, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (although the Supreme Court found that "the persuasive authority of the EEOC regulations" to interpret the ADA was not clear, the Court applied those regulations because they were accepted as such by both parties).

{¶87} This court applies the prior regulatory interpretation of the phrase as requiring the employee's work to be "significantly restricted." We agree with the trial court's conclusion that the five-hour-per-day restriction does not rise to the level of a significant restriction on her work life. In fact, although she was restricted to five hours per day, the physician's note made no restriction as to the number of days worked per week. There was no explanation as to why the employee did not work five hours per day, *seven* days per week as opposed to her five hours per day, five days per week. (Although this would not have provided her with the required fifty

hours per week, it would have put her closer to the required hours for an assistant store manager.)

**{¶88}** We uphold the trial court's decision finding the employee has not established she fits the definition of disabled. Therefore, the employee's disability claims (discrimination in termination and failure to accommodate) fail.

**{¶89}** In conclusion, the employee's assignments of error are overruled, and the trial court's decision is upheld.

Donofrio, P.J., dissents; see dissenting opinion.

DeGenaro, J., concurs.

DONOFRIO, P.J. dissenting.

{¶90} Because I would find there are genuine issues of material fact that preclude summary judgment on each of the employee's claims, I respectfully dissent from the majority opinion.

{¶91} The employee began working for the employer in 1999. She worked five days a week, 50 hours per week, apparently without incident, until her work injury on September 29, 2008. During that period, she was promoted to manager. She was terminated on October 22, 2010.

{¶92} First, regarding the workers' compensation retaliation claim, the focus is on whether the employee provided evidence of a causal connection between her pursuit of her workers' compensation claim and her discharge. Construing the evidence in the light most favorable to the employee, as we are required to do on summary judgment, it could be concluded that the employee was terminated for pursuing the additional allowance by appealing the denial of that allowance. "The prima facie case in claims under R.C. 4123.90 does not present an onerous burden for plaintiffs; it is, indeed, 'easily met.' (Internal citations omitted.)" *Scalia v. Aldi, Inc.*, 9th Dist. No. 25436, 2011-Ohio-6596, ¶14, quoting *Dover v. Carmeuse Natural Chems.*, 5th Dist. No. 10-CA-8, 2010-Ohio-5657, ¶43.

{¶93} In this case, as the magistrate pointed out, the employee's termination letter specifically referenced her workers' compensation claim. (Good Dep. Ex. 26). Additionally, the employer contended that the employee's workers' compensation claim was over and her appeals had ended. (Good Dep. 170). But this was not the case. While the employee's allowance was denied, she still had appeal rights to the trial court. (Good Dep. Ex. 30). And, as illustrated by the eventual allowance of a still different diagnosis, the claim and issues in the claim continued. Moreover, although the employer cited its "neutral attendance" policy as a reason for the employee's termination, the employee's review revealed attendance was not an issue. In the employee's February 23, 2010 review, the employer stated that her attendance "exceeded" company expectations. (Good Dep. Ex. 5). And while the employer asserted the employee could not meet the 50-hour work week required of managers,

it is a question of fact for a jury whether the 50-hour requirement was an essential job function.

**{¶94}** Second, regarding the disability discrimination claim, genuine issues of material fact exist as to whether the employee was "disabled" and as to whether she was terminated, at least in part, because of her disability. The employee's workers compensation claim was allowed for lumbar sprain and a bulging disc at L5-S1. Dr. Black's notes reflect numerous restrictions over a period of time. (Good Dep. Exs. 9-14). He indicated that the employee had severe lower back pain with a lot of pressure, pressure in her midback, numbness in her right thigh, and complaints of pain in her right leg and buttocks. Dr. Black provided the employee with a temporary handicap placard for her vehicle. (Good Dep. Ex. 16). Dr. Dunne reported that the employee sought his assistance with regard to her workers' compensation claim because she had debilitating low back pain and she did not feel she was getting better. After examining the employee, Dr. Dunne reported she was in obvious distress and discomfort, had difficulty moving, had a flattened lumbar lordosis, pain to palpation, and restriction of movement. Dr. Dunne noted that there was no indication of any back injury before or after her work injury. He said there "was certainly an injury at the L5-S1 disc." (Good Dep. Ex. 16). Dr. Dunne recommended a MRI. Ohio Diagnostic Services performed a functional capacity evaluation and reported multiple restrictions in movement relating to the lumbar spine, that the employee was functioning at the sedentary to light physical demand category, and that any return to work program should not exceed the light physical demand category. (Good Dep. Ex. 23).

**{¶95}** Despite her limitations, as the magistrate documented and as is discussed below, the quality of the employee's work in some areas exceeded expectations. Leo Henry, the director of the employer's operations, reported that she did a good job for him. (Henry Dep. 58). Christopher Sammartino, the employer's chief operating officer, admitted her store was clean and organized. (Sammartino Dep. 62),

**{¶96}** The employer was aware of all of this evidence. Through the employee's worker's compensation claim, the employer had access to all of the

employee's medical records relating to her back. Indeed, it is undisputed that, for an extended period of time, the employer recognized these medical/physical restrictions to the extent that it provided the employee with modified work hours. The reduced work hours did not end until her termination. Despite these facts, the trial court concluded that there was no genuine issue of material fact as to whether the employee was disabled and whether or not the employer knew or had reason to know of her disability. The majority affirms that decision. Whether or not this evidence supports a finding that the employee was disabled, that she was otherwise qualified to perform her job with or without reasonable accommodations, and whether as a result, at least in part, she was terminated because of her disability, are questions of fact to be determined by the fact finder.

{¶97} Finally, regarding the failure to accommodate claim, genuine issues of material fact exist as to whether the employer's failure to continue the five-hour work days constituted a failure to accommodate and as to whether there was a breakdown in the interactive process.

{¶98} The employee presented evidence that despite her five-hour work days, her review reflected that she was exceeding expectations in the categories of:  quality of work; quantity of work; dependability; attendance and punctuality; job knowledge; and safe work practice. (Good Dep. Ex. 5). She was meeting expectations in the categories of:  communication, judgment and decision making, overall store management; individual effectiveness; and initiative. (Good Dep. Ex. 5). And, her operations director testified that she did a good job.  (Henry Dep. 58).  Given this evidence, a genuine issue of material fact exists as to whether the employer's failure to accommodate the employee with a five-hour work day was unreasonable under the disability laws.

{¶99} Moreover, as to the interactive process, the employer argued the employee was at fault for failing to return the interactive questionnaires.  But the employee presented evidence that she instructed Dr. Dunne to complete the questionnaire and fax it to the employer.  (Barber Dep. 131-136).  She did not learn that he failed to fax the questionnaire to the employer until she was terminated. (Barber Dep. 180-181).  Additionally, the employee presented evidence that the

employer was aware of her ongoing medical issues. The employer was aware of the ongoing workers' compensation claim. The employer had access to all related medical records of the employee. R.C. 4123.651. As the magistrate concluded, there are genuine issues of material fact as to who was at fault, if anyone, in this interactive process. Construing the evidence in a light most favorable to the employee, one could conclude that there was no breakdown, or that either party was at fault.

**{¶100}** For these reasons, I would reverse the trial court's grant of summary judgment to the employer and would remand the matter to the trial court for further proceedings.